### Sarbey v. National City Bank, Akron
### Case No. 14094
### Summit County, (9th)
### Decided January 31, 1990
[Cite as 1 AOA 330]

*Scott H. Ruport and Mark W. Bernlohr, Attorneys at Law, 610 CitiCenter Bldg., 146 S. High St., Akron, OH. 44308 for Plaintiff.*

*Stephen Peters, Attorney at Law, 1375 E. 9th St., 2100 One Cleveland Center, Cleveland, OH. 44114 for Defendants.*

BAIRD, P. J.

This cause comes before the court upon the

order of the Summit County Court of Common Pleas disqualifying Sarbey's attorney, Scott H. Ruport, from representing Sarbey in his claim against defendants, on the ground of conflict of interest in violation of Disciplinary Rule 5-105 of the Ohio Code of professional Responsibility.

Defendants in the action below were: 1) National City Bank, Akron, (NCB Akron), as co-trustee of the David M. Siff trust, and as co-trustee of the Charles E. Schwartz trust; 2) Lowell Siff, individually and as co-trustee of the David M. Siff trust; 3) Irene S. Sarbey and David J. Schwartz as co-trustees of the Charles E. Schwartz trust; 4) Richard S. Amundsen, a trust officer of NCB Akron, individually; 5) Gary Craig, a former trust officer of NCB Akron, individually; and 6) the law firm of Benesch, Friedlander, Coplan and Aronoff as escrow agent.

In June of 1986, Sarbey and the defendants[1] entered into a management agreement whereby Sarbey was employed as agent to operate, manage, and negotiate for the rental and leasing of store spaces at Fairlawn Plaza Shopping Center, which was owned by the above-named trusts. Pursuant to the terms of the agreement, Sarbey assigned his management duties to Fairlawn Plaza, Inc., a corporation specifically formed for this purpose and wholly owned by Sarbey, who was also its president and, apparently, sole officer. In February of 1988, the shopping center was sold for approximately sixteen million dollars. A dispute arose concerning Sarbey's right to commissions and other compensation stemming from this sale.

Defendants filed suit for declaratory judgment against Sarbey in the Summit County Probate Court on July 11, 1988. On July 25, Attorney Scott H. Ruport filed leave to plead as Sarbey's attorney. Ruport filed a motion to dismiss for lack of subject matter jurisdiction, which was granted on August 29. Prior to the dismissal, on August 26, Ruport, on behalf of Sarbey, initiated the present action in the Summit County Court of Common Pleas for declaratory judgment, breach of contract, quantum meruit, unjust enrichment, fraud, and bad faith. A pre-trial conference was held on December 28, 1988, at which apparently all parties and their attorneys were present. Trial was set for June 7, 1989.

On March 15, 1989, after numerous preliminary discovery motions and notices had been filed, appellees NCB Akron, Craig, and Amundsen[2] filed a motion to disqualify attorney Ruport on the basis of conflict of interest in violation of DR 5-105(A), which reads:

"* * *.
"A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except the extent permitted under DR. 5-105(C)."
"* * *."

NCB Akron alleged that, beginning in December of 1986, Ruport had represented it in at least six cases involving Fairlawn Plaza Shopping Center and that Ruport was continuing to act its attorney in two of these cases. Ruport's first representation of NCB Akron was in a dispute over commissions claimed pursuant to an agreement with Wedren Properties, Inc., the former manager of Fairlawn Plaza Shopping Center. NCB Akron claimed that the Wedren management agreement was substantially similar to the Sarbey agreement, and that the Wedren agreement was drafted by a law firm with which Ruport was associated at the time of its drafting. NCB Akron further claimed that the issues in the Wedren dispute were substantially similar to the issues in the present case. Finally, NCB Akron had not expressly consented to Ruport's dual representation in this case, under the requirements of DR 5-105(C), which reads:

"* * *.
"In the situations covered by DR 5-105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each."
"* * *."

Appellant denied that Ruport was involved in any way with the drafting of the Wedren agreement, and denied that he had ever been a member of the law firm that drafted it. Appellant admitted that Ruport represented NCB Akron in the Wedren litigation, yet claimed that there was no substantial similarity between the issues in these two cases, as the

Wedren case involved a dispute over the management of the shopping center, while the present case involved its sale.

Appellant admitted that Ruport was the attorney for both past and pending cases in which defendants were named parties yet asserted that, in all these other cases for which NCB Akron claimed Ruport was its attorney, Ruport's true client was Sarbey (i.e. Fairlawn Plaza, Inc.), and that NCB Akron and the other defendants were named as parties to these actions only for the sake of "technical completeness" of the pleadings[3]. As all these cases purportedly involved disputes over lease agreements with various tenants of the shopping center, there was no substantial similarity between these cases and the present action.

Appellant further asserted that there would be no conflict of interest in Ruport's dual representation, in that no confidences would be revealed or used against NCB Akron, as Serbey was either the conduit of all communications, or was otherwise privy to all communications, that Ruport had with NCB Akron in all these cases. Finally, appellant asserted even if there was conflict of interest stemming from Ruport's prior representation of NCB Akron in the Wedren case, that NCB Akron had effectively waived its right to relief by failing to timely object, and thus had impliedly consented to Ruport's adverse representation.

On April 12, 1989, the trial court ruled that Attorney Ruport was disqualified to represent Sarbey in the present case on the grounds that Ruport had represented and continued to represent NCB Akron in its capacity of co-trustee of the Siff and Nobil trusts[4] and that NCB Akron had not consented to Ruport's dual representation in the present case.

### ASSIGNMENT OF ERROR
"The trial court erred in granting defendant's motion to disqualify counsel.
"(A) National City Bank waived any right to object to the representation of the plaintiff-appellant by Scott. H Ruport and or Ruport Co., L.P.A.
"(B) Assuming arguendo that National City Bank did not waive its right to object to the representation of the plaintiff-appellant by Scott H. Ruport and/or Ruport Co., L.P.A., such representation does not constitute a conflict of interest and/or violation of any ethical standard."

Though appellant assigns a single error on appeal, he raises two distinct issues for review. We will first address the issue of whether there was conflict of interest such as to warrant disqualification of Ruport from representing Sarbey in this case. At the outset, we note that our standard of review when considering an appeal from a trial court's disqualification of an attorney is that the finding of the trial court will be reversed only upon a showing of abuse of discretion by the trial court. See *City of Cleveland* v. *Cleveland Elec. Illuminating Co.* (N.D. Ohio 1977), 440 F. Supp. 193, 196.

In determining whether an attorney should be disqualified from representing an interest adverse to a former client, the courts have generally recognized that a "substantial relationship test" is to be applied. That test requires that disqualification should be ordered where there is any substantial relationship between the subject matter of a former representation and that of a subsequent adverse representation. *T.C. Theatres Corp.* v. *Warner Bros. Pictures, Inc.* (S.D.N.Y. 1953), 113 F. Supp. 265, 268. The burden of proof in such a case is on the former client now moving for disqualification:

"* * *.

"[T]he former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. It will not inquire into their nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained." Id.

However, the burden of proof shifts and the applicable standard changes where an attorney seeks to represent an interest adverse to a *present* client:

"* * * [T]he lawyer who would sue his own client, asserting in justification the lack of 'substantial relationship' between the litigation and the work he has undertaken

to perform for that client, is leaning on a slender reed indeed. Putting it as mildly as we can, we think it would be questionable conduct for an attorney to participate in any lawsuit against his own client without the knowledge and consent of all concerned. * * *.

"* * *[T]he 'substantial relationship' test does not set a sufficiently high standard by which the necessity for disqualification should be determined. That test may properly be applied only where the representation of a former client has been terminated and the parameters of such relationship have been fixed. Where the relationship is a continuing one, adverse representation is prima facie improper, . . . and the attorney must be prepared to show, at the very least, that there will be no actual or *apparent* conflict in loyalties or diminution in the vigor of his representation.* * *."

"* * *." *Cinema 5, Ltd.* v. *Cinerama, Inc.* (C.A. 2, 1976), 528 F. 2d 1384, 1386-87.

As stated above, it was admitted in the trial court that Ruport was the attorney in two cases pending in the common pleas court. However, appellant claimed that, apart from the Wedren litigation, Ruport was acting solely as attorney for Fairlawn Plaza, Inc., in all subsequent litigation. All communications by Ruport regarding these cases were made with and/or through Sarbey, and all bills for Ruport's services were sent to and paid by Fairlawn Plaza, Inc. NCB Akron and the other defendants were thus named as parties only for "technical completeness" of the pleadings. Therefore the only possible source of conflict of interest would stem from Ruport's *former* representation of NCB Akron. As there was no substantial relationship between that case and the present action, there was no conflict of interest[5]. Appellant's contention that NCB Akron was not Ruport's true client is belied by substantial evidence in the record. The nature of the relationship between NCB Akron as co-trustees and Fairlawn Plaza, Inc., as its managing agent for the shopping center underminesappellant'simplicitcharacterization of them as distinct parties with distinguishable interests. As the management agreement shows, all funding for Fairlawn Plaza, Inc.'s activities came directly from NCB Akron. Fairlawn Plaza, Inc., was fully accountable to NCB Akron for all its expenditures and activities, all of which were in pursuit of dependant's interest. All control of policy, including litigation decisions, rested ultimately with NCB Akron.

The fact that all bills for work done by Ruport were submitted to Fairlawn Plaza, Inc., does nothing to support appellant's contentions. This practice began with the Wedren litigation, for which appellant admits Ruport's representation of NCB Akron, and continued with all the cases in issue. Often on the same bill, Ruport would itemize work done on the Wedren case along with work done on the other cases, indicating that there was no significant distinction between any work allegedly done solely for Fairlawn Plaza, Inc., and that done for NCB Akron.

Of particular significance in this regard is the pending case, *Westate Realty* v. *Budget Rent-A-Car of Akron, et al.* Westate Realty is an Ohio partnership, which is partially owned by the Nobil trust, for which National City Bank, Akron, is a co-trustee. According to the common pleas court docket for this case, Westate Realty was the sole named plaintiff, and Ruport was its attorney. By virtue of the co-trusteeship, NCB Akron had an interest in the case, but we find nothing in the record to indicate that Fairlawn Plaza, Inc., had any interest or concern in the matter whatsoever. Yet, as with all other cases, Ruport submitted bills for work done on the Westate litigation to Fairlawn Plaza, Inc.

Further evidence that Ruport was attorney for NCB Akron in all these cases appears in a settlement agreement drafted by Ruport in a dispute involving Rising Sun, Inc. In that document, Ruport is unequivocally identified as the attorney for NCB Akron and the other defendants. In a letter addressed to appellee Amundsen, Ruport acknowledges receipt of a settlements check from Rising Sun, Inc., made payable to "National City Bank and Lowell Siff, Co-Trustees and their attorney, Scott Ruport".

Finally, and perhaps most significantly, in a sworn affidavit submitted to the trial court as part of appellant's response to NCB Akron's motion for disqualification, Ruport avers that "Defendants, National City Bank, Richard S. Amundsen and Gary Craig, knew in 1986 that National City Bank was retaining Ruport Co., L.P.A. to litigate lease rental disputes and management fee disputes", i.e., the very cases for which appellant now claims Fairlawn Plaza, Inc., was Ruport's sole client. It is clear from the above evidence that, in all these cases, NCB Akron was Ruport's primary client, and that, if

anyone, it was Fairlawn Plaza Inc., that was named as a party to these actions merely for the sake of "technical completeness".

The primary purpose behind the prohibition in DR 5-105 against dual representation of clients with adverse interests is to ensure that confidences or secrets of a client imparted to an attorney in the course of their attorney-client relationship will not be revealed to an adverse party or used to the client's disadvantage. Such violations of the confidentiality of the attorney-client relationship are proscribed by DR 4-101:

> "* * *.
> "(B) Except when permitted under DR 4-101(C), a lawyer shall not knowingly:
> "(1) Reveal a confidence or secret of his client.
> "(2) Use a confidence or secret of his client to the disadvantage of the client.
> "(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure."
> "* * *."

Once an attorney-client relationship has been established, the determination of whether a conflict of interest exists by virtue of adverse representation depends on whether confidential information was imparted during the attorney-client relationship, and whether there is a threat of improper use of that information in violation of DR 4-101 through the adverse representation. See *In the Matter of Charles Willie L.* (1976), 132 Cal. Rptr. 840, 842.

As a general rule, there is a rebuttable presumption of disclosure of confidences in case where there is proof of a former attorney-client relationship concerning substantially related matters. *City of Cleveland* v. *Cleveland Elec. Illuminating, supra* at 209. Where, as here, there is a present attorney-client relationship and the attorney undertakes representation of an interest adverse to that client, a rebuttable presumption of disclosure of confidence is likewise appropriate.

By the very nature of his integral role in litigation and negotiation of settlements in all these cases, Ruport would have been privy to confidential information of NCB Akron's litigation and settlement strategies and policies, knowledge which could now be used to NCB Akron's disadvantage. Appellant, however, makes the broad assertion that NCB Akron had never imparted any confidential information to Ruport during his entire tenure as attorney, including even Ruport's admitted direct representation of NCB Akron in the Wedren litigation; therefore, "no possibility exists" that Ruport could have received any "privileged information" from NCB Akron. Because all information that Ruport received came to him through Sarbey, there is no information that Ruport could reveal or use against NCB Akron that any other attorney representing Sarbey would not also have available to him.

The fifth Circuit Court of Appeals rejected a similar argument in *Brennan's Inc.* v *Brennan's Restaurant, Inc.* (5th Cir. 1979), 590 F. 2d 168.

We find that court's reasoning persuasive, and adopt it here:

> "* * *This argument, in our view, interprets too narrowly an attorney's duty to 'preserve the confidences and secrets of a client.' ABA Code of Professional Responsibility, Canon 4 (1970). The fundamental flaw in defendants' position is a confusion of the attorney-client evidentiary privilege with the ethical duty to preserve a client's confidences. Assuming the prior representation was joint, defendants are quite correct that neither of the parties to this suit can assert the attorney-client privilege against the other as to matters comprehended by that joint representation. . . But the ethical duty is broader than the evidentiary privilege: 'This ethical precept, unlike the evidentiary privilege, exist without regard to the nature or source of information or the fact that other share the knowledge.' ABA Code of Professional Responsibility, EC 4-4 (1970). 'A lawyer should not use information acquired in the course of the representation of a client to the disadvantage of the client . . . .' *Id.* EC 4-5. The use of the word 'information' in these Ethical Considerations as opposed to 'confidence' or 'secret' is particularly revealing of the drafters' intent to protect all knowledge acquired from a client, since the latter two are defined terms. *See id.*, DR 4-101(A). Information so acquired is sheltered from use by the attorney against his client by virtue of the existence of the attorney-client relationship. This is true without regard to whether someone else may privy to it. * * *."[6] *Id.* at 171-172.

We are therefore satisfied that attorney Ruport was engaged in a conflict of interest by undertaking to represent an interest adverse to a present client, and thus we find no abuse of discretion by the trial court in its ruling on this issue. Normally, such a determination justifies disqualification of the offending attorney. However, appellant raises another issue that requires resolution before we can determine whether disqualification was proper in the present case.

Appellant asserts that there has been implied consent to Ruport's dual representation, in that NCB Akron has waived the right to object by failure to timely raise the issue in the course of litigation. NCB Akron's first notice of Ruport's representation of Sarbey came on July 25, 1988, when Ruport filed leave to plead on Sarbey's behalf in NCB Akron's declatory action filed in the probate court. NCB Akron's first notice in the present case came when Ruport filed the complaint on behalf of Sarbey on August 26, 1988.

Appellant argues that the failure to file the motion to disqualify until March 15, 1989, nearly eight months after Ruport's first representation of Sarbey against NCB Akron, and nearly seven months after the inception of the present case, constituted an implied consent to Ruport's adverse representation. Appellant further alleges that NCB Akron knowingly withheld the filing of the motion to disqualify until a crucial point in pre-trial litigation for tactical purposes of delay. NCB Akron contends that, thought it may have been aware of Ruport's dual representation from the beginning, it was not made aware of the ethical implications until its attorneys in the present action learned of Ruport's dual representation some five weeks prior to the filing of the motion.

As a general rule, a former client may be held to have waived the right to object to an attorney's subsequent representation of an adverse interest by failure to timely raise the objection. Annotation (1957), 52 ALR 2d 1243, 1268, Section 9. Timeliness is not a fixed concept, but generally courts have held that the proper time within which to raise an objection is soon after the onset of litigation, *International Brotherhood of Teamsters* v. *Hoffa* (D.C. 1965), 242 F. Supp. 246, or at least within a reasonable time once the facts are known, *Milone* v. *English* (D.C. 1962), 306 F.2d 814. Cases have varied from finding waiver by failure to object within ten days, *Levitt* v. *Levitt*

(Mass. App. 1980), 403 NE. 2d 143 (pursuant to a local rule), to finding no waiver despite the passage of three years before the objection was raised, *Emle Industries, Inc.* v. *Patentex, Inc.* (C.A. 2, 1973), 478 F. 2d 562.

Though numerous cases recognize the concept of implied waiver of objection to adverse representation by a former attorney, we have found few cases that have applied it in circumstances such as here, where there is simultaneous representation of adverse clients. In these few cases, there were usually extreme circumstances that justified such action. For example, in *Milone* v. *English, supra*, the court denied an injunction to prevent councel from further representation of both a union and its officers where litigation had already culminated in a judgment by consent decree, and where the litigation had gone on for four years with the facts of dual representation known to all parties and the court from the inception of the suit. Similarly, in *Michael* v. *McKenna* (Wis. 1929), 227 N.W. 396, a motion to disqualify counsel was denied when the complainant sat idly by and took the chance of procuring a favorable verdict before raising the objection.

The concept of implied consent or waiver is closely akin to the equitable concepts of estoppel and laches. *See City of Cleveland* v. *Cleveland Elec. Illuminating, supra*, at 203-203; *Emle Industries, Inc.* v. *Patentex, Inc., supra*, at 574. Accordingly, the equitable remedy of imposing an implied waiver will not be used to bar a motion to disqualify where no prejudice has resulted from the delay. *Id.* In cases such as the one at bar, any prejudice resulting from such delay must be further balanced against the serious ethical implications of dual representation, and against the mandates of DR 5-105.

DR 5-105(C) allows for multiple representation only in narrow circumstances: if it is *obvious* that the attorney can adequately represent both interest, *and* if each client consents to such representation after *full* disclosure of the possible effect of such representation. There is nothing in the record to indicate -- indeed, appellant does not even allege -- that there was ever any attempt by Ruport to follow the clear dictates of this rule. In view of this fact, and in view of the equitable maxim that one who seek equity must do so with "clean hands", we find that it would have been inappropriate for the court to have found implied waiver in this case.

Where dual representation is involved, the

court should apply the implied consent or waiver remedy with caution. A motion to disqualify counsel for conflict of interest stemming from dual representation of adverse clients should be denied on the basis of implied consent or waiver only where there is substantial proof that the movant's delay has resulted in serious prejudice to the opposing party, or where litigation has proceeded to the point where disqualification would create substantial hardship to the opposing party, or where it is clear that the moving party knowingly delayed the filing of the motion in order to cause such hardship or prejudice.

We find none of the these factors to be evident here. The trial date was nearly three months away when NCB Akron filed its motion, and no substantial discovery had been completed to that point. There is no showing of hardship to appellant, beyond the fact that he may have to spend additional time in discussing his case with a new attorney. There is no showing, beyond mere allegation, that there was any intent on the part of NCB Akron to cause appellant any prejudice or hardship. The disqualification of Ruport in no way prejudiced appellant's chances of ultimately prevailing on the merits of his case.

The trial court was correct in finding that attorney Ruport was engaged in a conflict of interest in undertaking to simultaneously represent NCB Akron and Sarbey, and in finding that there was no consent -- either express or implied -- by NCB Akron to Ruport's dual representation. Therefore we find no abuse of discretion by the trial court in disqualifying attorney Ruport from representing Sarbey in this case. Judgment affirmed.

The Court finds that there were reasonable grounds for this appeal.

We order that a special mandate issue out of this court, directing the County of Summit Common Pleas Court to carry this judgment into execution.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E).

REECE, J., CIRIGLIANO, J., Concur

---

[1] By "defendants" we exclude the law firm of Benesch, Friedlander, Coplan and Aronoff, whose only involvement with this case is as the holder of an escrow account in which at least a portion of the money in controversy was deposited.

[2] Appellees will be referred to collectively as "NCB Akron".Where necessary to separately distinguish the bank, its full title will be used.

[3] We presume by this that appellant was alluding to Civ. R. 19, which requires action to be brought in the name of the real party in interest.

[4] The role of the Nobil trust in the ongoing litigation will be discussed infra.

[5] Before this court, appellant's argument is somewhat modified. Appellant now alleges that, since the time of the trial court's ruling, Ruport has withdrawn as counsel of record in the two pending cases. Therefore, even if it is found that Ruport represented NCB Arkon in these cases, they are now all instances of former representation, to which the substantial relationship test applies. As this fact was not in evidence before the trial court, nor in the record before this court--it is merely asserted by appellant in his brief--it is of no weight in our review of the trial court's ruling, and cannot be cited, as appellant attemps to do, as the basis for finding the trial court in error. Even if Ruport had withdrawn as attorney in the two pending cases prior to the trial court's ruling, that should not have influenced the court's decision. As another court has noted:

> "It is our strong view that an attorney who is simultaneously representing two clients with differing interest should not be able to avoid conforming to Canon 5 by simply dropping one of the clients at his option when a disqualification motion is filed. ... Otherwise, little incentive would exist for attorneys to avoid dual employment by adverse parties in the first place." Margulies by Margulies v. Upchurch (Utah 1985), 696 P.2d 1195,1202-03.

[6] All quotes and cites to the ABA Code of Professional Responsibility are identical to those in the Ohio Code.