JANIS, Trustee, Appellee,

v.

CASTLE APARTMENTS, INC. et al., Appellants.

[Cite as *Janis v. Castle Apts., Inc.* (1993), 90 Ohio App.3d 224.]

Court of Appeals of Ohio,
Summit County.

No. 16082.

Decided Sept. 15, 1993.

226

<em>Nicholas T. George,</em> for appellee Catherine Janis, Trustee.

<em>John E. Holcomb, Archie W. Skidmore</em> and <em>Marvin N. Halpern,</em> for appellants Castle Apartments, Inc., Lillian Gross, Scott Gross, Victor S. Gross and Sharon Gross Halpern.

---

*Per Curiam.*

In the 1940s, John Janis and Victor Gross began a joint business venture of acquiring and developing rental properties in the Akron, Ohio area. These properties (hereinafter referred to as the "Castle" properties) are owned by various corporations, partnerships and trusts, which in turn are owned and/or controlled by members of the Gross and Janis families. The properties were managed through Castle Apartments, Inc., in which John and Victor were equal shareholders.

In 1985, the Janis family, because of John's poor health, was considering selling its interest in the business to the Gross family. The Janises sought the advice of attorney Nicholas T. George in negotiating a buy-sell agreement. The Gross family offered to purchase the Janises' interest. The Janises countered with a higher figure. Unable to reach an acceptable price, the parties ended negotiations. However, an agreement was reached whereby Victor Gross would manage the business under a five-year consulting contract.

During these five years the relationship between the two families apparently deteriorated. The Castle properties were being managed by Victor Gross and his son Scott Gross. They approached the Janis family about developing certain property. Although this property was owned equally by the two families, the Grosses offered the Janises a 22.5 percent interest in the property once developed. Upon the advice of attorney George, the Janises refused to approve development of the land on these terms. In this same period, the Janis family wanted John King, John Janis's grandson, to assume a more active role in the management of the business. Victor and Scott Gross resisted such efforts. On behalf of the Janis family, attorney George began preparing for litigation to dissolve the business and split its assets.

On May 31, 1990, a derivative action was brought by Catherine Janis, as trustee of the John Janis Trust, against Victor Gross and Castle Apartments, Inc. The trust holds one half of the outstanding shares of stock in the corporation. Catherine alleged that $30,000 in consulting fees was paid by the corporation to Victor Gross after the expiration of his five-year consulting contract. Attorney George represents Catherine Janis and the trust in this pending action.

On August 21, 1990, John Janis died. This triggered various buy-sell agreements whereby the Gross family was to purchase the Janises' interest in the partnerships and corporations and had the first option to buy out the Janises' interest in the business trusts. The families dispute the terms upon which these buy-sell agreements must be exercised. On January 29, 1992, the Gross family commenced a declaratory action seeking construction of these contracts. The Grosses were originally represented by attorney Marvin Halpern. On February 6, 1992, the court was notified that attorney Archie W. Skidmore would be representing the Grosses. On March 25, 1992, this declaratory judgment action was consolidated with the derivative suit. A third lawsuit was filed by the Janises, seeking an accounting and the dissolution of the business. On May 29, 1992, this third action was consolidated with the other two.

Relevant to this appeal, the Janis family, on April 20, 1992, moved to disqualify attorney Skidmore from representing the Gross family. They allege that beginning in 1985, attorney George repeatedly consulted with attorney Skidmore for advice concerning the interactions between the two families. They contend that,

because of this ongoing consultation, attorney Skidmore was privy to confidential information which would be prejudicial to them if he is permitted to represent the adverse interests of the Gross family.

Thereafter, the Gross family moved to disqualify attorney George from representing the Janises. The matter was assigned to a referee and a hearing was held on June 16, 1992. In the resulting report, the referee, while finding no basis to disqualify attorney George, recommended that attorney Skidmore should be disqualified from representing the Grosses. Over the objections of the Gross family, the court adopted this recommendation. It is from this order that the Grosses appeal, raising the following assignment of error:

"The trial court erred in disqualifying Archie W. Skidmore, Esq., and Skidmore & Associates Co., L.P.A., as counsel for the Gross family."

It is well settled that an attorney may not represent an interest adverse to that of a former client when there exists a " 'substantial relationship' " between the subject matter of the former representation and the matters embraced by the present representation. *Sarbey v. Natl. City Bank, Akron* (1990), 66 Ohio App.3d 18, 23–24, 583 N.E.2d 392, 395–396, quoting *T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.* (S.D.N.Y.1953), 113 F.Supp. 265, 268. The burden to show a substantial relationship is properly placed upon the former client seeking disqualification. However, once established, courts will assume that confidences were disclosed during the course of the former representation. *Sarbey,* 66 Ohio App.3d at 24, 583 N.E.2d at 396; *Gen. Elec. Co. v. Valeron Corp.* (C.A.6, 1979), 608 F.2d 265, 267. This prohibition against representing an interest contrary to that of a former client includes not only those attorneys directly involved in the representation, but all attorneys associated within the same law firm. The confidences, which are assumed to be disclosed in the attorney-client relationship, are also presumed to be disclosed to an attorney's fellow associates. See, generally, Annotation, Disqualification of Law Firm (1982), 56 A.L.R.Fed. 189.

The primary issue in the present case is whether this rule extends to an attorney who has provided free consultation, not directly to the client, but as a courtesy to the client's attorney. Depending upon the level of the consulting attorney's involvement and the nature of the disclosures, we find that disqualification may be appropriate.

The Grosses argue that any expansion of the rule, beyond the formal attorney-client relationship, will encourage attorney misconduct. They contend that attorneys, in preparation for litigation, will be encouraged to consult with potentially opposing attorneys to support a later motion to disqualify. We find this scenario to be unrealistic. As a general practice, few attorneys will provide ongoing, detailed consultation to another attorney, absent some remuneration.

In the event payment is made, the consulting attorney has, at least implicitly, engaged in representing the client. As to those limited instances where an attorney, as a courtesy to another attorney, provides advice at no expense, seldom will the disclosure of information to the consulting attorney rise to a level warranting disqualification.

Additionally, the party seeking disqualification will carry the burden of proof. When an attorney represents an interest adverse to an existing client, such representation is prima facie improper. The client has the burden only to show the present existence of an attorney-client relationship. *Sarbey*, 66 Ohio App.3d at 24, 583 N.E.2d at 396, quoting *Cinema 5, Ltd. v. Cinerama, Inc.* (C.A.2, 1976), 528 F.2d 1384, 1387. As previously noted, when the representation is adverse to a former client, the former client must show a "substantial relationship" between the subject matter of the former and present representations. Once this relationship is proven, a court will presume that confidences were disclosed warranting disqualification. *Sarbey*, 66 Ohio App.3d at 23–24, 583 N.E.2d at 395–396; *Gen. Elec. Co.*, 608 F.2d at 267. In the absence of any formal attorney-client relationship, and where the attorney provided ongoing consultation to the client's attorney, it is appropriate that the client prove both that confidences were revealed and that these confidences will prejudice the client if the consulting attorney is permitted to represent an adverse interest. With this in mind we turn to the facts of the present case.

At the reference hearing attorney George testified that, beginning in 1985, he consulted with attorney Skidmore in negotiating a buy-sell agreement between the two families. Although Skidmore may not have been specifically identified, George informed the Janis family that, *per their request*, he was consulting with another attorney with considerable experience in the litigation and/or dissolving of large family corporations.

The initial consultation is further evidenced by a letter from attorney George to Victor Gross, dated November 21, 1985, noting that a copy was sent to attorney Skidmore. Thereafter, attorney George consulted with attorney Skidmore regarding the Grosses' request for the Janises' approval in developing certain land, the Janises' desire to have John King assume more responsibility in the business, and the possible dissolution of the business. The Janises presented twelve different documents, dated from November 21, 1985 to November 5, 1990, wherein attorney George communicated with attorney Skidmore regarding the issues arising between the two families.

The referee found:

"It is strongly apparent from the very compelling evidence presented that the level of discussion between attorney Skidmore and George, both by letter and

telephone, was not insignificant or trifling aspects of the Janis family's plans. Rather, it involved the disclosure of revealing fundamental concepts, concerns, worries, etc. about what strategy would be best for the Janis family to undertake against the Grosses. Matters of great substance were disclosed to Mr. Skidmore and otherwise resulted in his being privy to what could be considered confidential information that no lawyer would want his adversary or potential adversary to be in possession of, as it would highly prejudice one's own case." Referee's Report, pages 6 and 7.

Given the instances wherein attorney George's consultations with attorney Skidmore were documented, and attorney George's statement that there were numerous phone discussions, attorney Skidmore's involvement went beyond the mere casual giving of friendly advice. Attorney Skidmore should have been aware that his involvement in attorney George's representation of the Janis family was more than incidental. Under these circumstances, the potential for prejudice to the Janis family is too great to allow attorney Skidmore to represent the Gross family's adverse interest.

A court has the "inherent power to regulate the [proceedings] before it and protect the integrity of its proceedings * * * [including the] authority of dismissal or disqualification from a case if an attorney cannot, or will not, comply with the Code of Professional Responsibility when representing a client." (Citations omitted.) *Mentor Lagoons, Inc. v. Rubin* (1987), 31 Ohio St.3d 256, 259, 31 OBR 459, 462, 510 N.E.2d 379, 382. The decision of the trial court in such matters will not be disturbed absent an abuse of discretion. *Grubb v. Hollingsworth* (1990), 69 Ohio App.3d 804, 591 N.E.2d 1297. In the present case, contrary to the Grosses' assertions, we find sufficient, credible evidence supporting the court's judgment.

■ Finally, the Grosses contend that the court erred in adopting the recommendation of the referee because of procedural errors at the reference hearing.

At the commencement of the hearing, the referee requested that both attorneys, George and Skidmore, give a summary of the basis for their respective client's motions to disqualify. The referee asked questions throughout these summaries. At the conclusion of attorney George's statement, attorney Skidmore attempted to respond to the allegations. The referee refused. The Grosses now claim that the referee failed to allow them to cross-examine attorney George or rebut his testimony with that of attorney Skidmore.

During its case, the Gross family presented only the testimony of Scott Gross. No indication was made that they wished to present the testimony of attorney Skidmore or call attorney George to the stand. In reviewing the record, we find

no objection raised by the Grosses concerning the format of the proceedings. Errors not raised during the course of the proceedings and at such time that they may be remedied are deemed waived and will not be reviewed on appeal. *LeFort v. Century 21–Maitland Realty Co.* (1987), 32 Ohio St.3d 121, 123, 512 N.E.2d 640, 642.

For the foregoing reasons, we overrule the Grosses' assignment of error and affirm the judgment of the trial court.

*Judgment affirmed.*

COOK, P.J., BAIRD and REECE, JJ., concur.