TRAVELERS CASUALTY AND SURETY
COMPANY, fka The Aetna Casualty
and Surety Co., Plaintiff,

v.

EXCESS INSURANCE COMPANY
LIMITED, Defendant.

No. CIV. A. 2:99–CV–389.

United States District Court,
S.D. Ohio,
Eastern Division.

Nov. 8, 2000.

**602**

Michael Proctor Graney, Mark S. Tibberts, Simpson Thacher & Bartlett—2, Columbus, OH, Kevin D. Lewis, for Travelers Casualty and Surety Co., plaintiff.

James Joseph Montgomery, G Todd Hoffpauir, Montgomery Rennie & Jonson, Cincinnati, OH, Louis J. Aurichio, Butler Rubin Saltarelli & Boyd, Chicago, IL, for Excess Insurance Company Limited, defendant.

### *OPINION AND ORDER*

KING, United States Magistrate Judge.

This is a diversity action, 28 U.S.C. § 1332, for breach of contract, breach of implied covenant of good faith and fair dealing, and declaratory judgment arising out of the alleged refusal by defendant to pay to plaintiff amounts allegedly due and owing under certain reinsurance agreements with respect to asbestos losses paid or expected to be paid by plaintiff pursuant to primary liability insurance policies issued by plaintiff to Owens–Corning Fiberglas ["OCF"]. *Second Amended Complaint.* This matter is now before the Court on defendant's motion for a protective order and on plaintiff's responsive motion to compel.

Plaintiff's motion for leave to file a surreply in opposition to the defendant's motion for a protective order and reply in support of its cross-motion to compel is **GRANTED.** The Clerk shall file the tendered memorandum.

The *Second Amended Complaint* alleges that, since the 1970's, OCF has been sued "in thousands of asbestos-related cases and has incurred hundreds of millions of dollars in defending and resolving many of these asbestos claims." *Second Amended Complaint,* ¶ 14. OCF tendered the claims to Travelers for defense and indemnity under the policies. *Id.,* ¶ 19. By 1993, Travelers' payments under the policies had exhausted policy limits. *Id.,* ¶ 18. OCF continued to submit claims, seeking additional defense and indemnity. *Id.,* ¶ 19. Travelers denied any further obligation under the policies, and litigation between OCF and Travelers thereupon ensued. *Id.,* ¶¶ 20–21. OCF and Travelers resolved that litigation in 1995, and modified their agreement in 1999. *Id.,* ¶¶ 24, 25. Pursuant to the modified agreement, Travelers has paid a sum, maintained in confidence, to OCF. *Id.,* ¶ 26. Travelers submitted reinsurance billings to Excess, which billings have remained unpaid to date. *Id.,* ¶¶ 27–31. Excess denies any obligation to pay those billings. *Id.,* ¶ 31.

In its Request for Production No. 20, plaintiff seeks production of:

All documents concerning any analysis of or discussions by or among members of the reinsurance asbestos claims sub-committee, NMA (Non–Marine Association) reinsurance sub-committee asbestos working party, and/or the environmental claims reinsurance group with regard to the following subjects: (1) the aggregation of

losses based on "common origin," "common cause," or "causative agency" language and/or theory; (2) the "failure to warn" as a basis for reinsurance presentation of asbestos-related claims; (3) the White Papers; (4) any long-tail claims submitted by Travelers Casualty; and (5) the principles of "follow the fortunes" and/or "follow the settlements."

*Exhibit E* to *Plaintiff's Cross–Motion for an Order Compelling the Production of Certain Documents.* Plaintiff's Interrogatory No. 9 asks whether

Excess Insurance Co. has been a party to or has analyzed discussions or determinations by or among members of the reinsurance asbestos claims sub-committee NMA (Non–Marine Association) reinsurance sub-committee asbestos working party, and/or the environmental claims reinsurance group with regard to the following subjects: (a) the aggregation of losses based on "common origin," "common cause" or "causative agency" language and/or theories; (b) the "failure to warn" as a basis for reinsurance presentation of asbestos-related claims; © the White Paper; (d) any long-tail claims submitted by Travelers Casualty; and (e) the principles of "follow the fortunes" and/or "follow the settlements."

*Exhibit F* to *Plaintiff's Cross–Motion for an Order Compelling the Production of Certain Documents.* Defendant moved for a protective order relieving it from producing certain documents which, defendant argues, are protected by the attorney-client privilege and/or work product doctrine. Consistent with F.R. Civ. P. 26(b)(5), defendant has prepared a privilege log listing the documents that have been withheld. *Exhibit A*, attached to *Defendant's Motion for Protective Order.* The documents at issue in these two motions have been submitted, under seal, for *in camera* inspection by the Court.[1]

**A**

The withheld documents at issue in these motions were retrieved from Peter Beaney, senior account manager at Excess who was responsible for a team of claims personnel handling, *inter alia,* claims made by plaintiff. The documents were either provided to, or generated by, Beaney during the course of annual conferences of the Environmental Claims Reinsurance Group ["ECRG"], comprised of London-based insurance companies and Lloyds syndicates, including defendant, facing pollution-related claims under reinsurance contracts from United States insurance/reinsurance companies. According to Beaney, the ECRG discussed and disseminated advice from attorneys with respect to legal issues involved in reinsurance claims relating to United States on-shore environmental pollution. *Affidavit of Peter A. Beaney,* ¶ 3, attached as *Exhibit B* to *Defendant's Motion for Protective Order.*[2] The ECRG attempted to respond to "actual and anticipated litigation/arbitration over such pollution-related claims." *Id.* Counsel were retained for the purpose of offering legal advice and services to the group. *Id.,* ¶ 4. Moreover, London-based insurance companies and Lloyd's syndicates "have regularly coordinated their defense of these reinsurance arbitrations and lawsuits." *Id.,* ¶ 5. Members of the ECRG entered into a "cross-consultation agreement" to facilitate the confidential exchange of legal advice and information. *Id.,* ¶ 6. Counsel for the various

---

**1.** Defendant originally withheld seventeen (17) documents. Plaintiff does not seek to compel production of Documents 16 and 17, *i.e.,* the Cross–Consultation Agreements among the "Commonly Interested Reinsurers." *Plaintiff's Cross–Motion for an Order Compelling the Production of Certain Documents,* at 2–3n.2. Defendant represents that all documents responsive to plaintiff's discovery requests have either been produced or included in the privilege log. *Affidavit of Kevin D. Connolly,* attached to *Defendant's Reply Memorandum in Support of Motion for Protective Order.*

**2.** Plaintiff contends that Beaney's assertions, made in his affidavit, as to the purpose of the ECRG conferences "should be rejected out of hand." *Plaintiff's Cross–Motion to Compel,* at 1–2. Plaintiff specifically argues that, because Beaney did not participate in the ECRG until 1994, he has no personal knowledge as to the original purpose and formation of the ECRG in the late 1980's. This Court concludes that Beaney has personal knowledge as to the purpose and activities of the organization during the period of time at issue in this case, *i.e.,* when he participated in the organization, and the Court will limit its consideration of his affidavit accordingly.

London-based reinsurers also signed a "cross-consultation agreement" to this same effect. *Id.* From 1994 through 1998, the ECRG sponsored annual conferences, one of the purposes of which was "to provide a forum in which the clients could discuss the legal and factual aspects of environmental pollution-related reinsurance claims...." *Id.,* ¶¶ 9–10. All participants agreed that discussions of the legal issues at those conferences "were privileged and confidential communications with the attorneys who represented Excess and the other London market of reinsurers." *Id.,* ¶ 10. Discussions and presentations frequently took the form of

> attorney-prepared hypothetical problems that were used to prompt discussion in small groups of clients and attorneys. The hypothetical problems allowed the clients to provide their input on legal issues, to many environmental insurance claims and the attorneys to provide their advice.

*Id.,* ¶ 11. Those issues were the subject of either current or anticipated disputes. *Id.,* ¶ 12. Moreover, Beaney also made handwritten notes of attorney presentations regarding various legal issues delivered during the 1997 or 1998 ECRG annual conventions. *Id.,* ¶¶ 15–18. The challenged documents presently at issue include hypothetical problems composed by ECRG counsel and distributed to the attendees at the conferences, Beaney's hand-written notes on presentations by counsel or the hypothetical problems, and the conference agenda or outline of topics as prepared by counsel.

The Court has reviewed the documents submitted under seal for *in camera* inspection and concludes that each of the withheld documents reflects the substance of communications regarding legal advice from counsel and those in attendance at the conference. Moreover, there is no evidence that those communications have been disclosed to any persons other than the conference attendees.

**B**

In opposing defendant's request for a protective order, plaintiff relies on two New York state court decisions which held that certain documents associated with the ECRG conferences are not protected by the attorney-client privilege. *Aetna Cas. & Surety Co. v. Certain Underwriters at Lloyd's London,* 176 Misc.2d 598, 676 N.Y.S.2d 734 (1998), *aff'd* 263 A.D.2d 367, 692 N.Y.S.2d 384 (1999), *leave to appeal dismd,* 94 N.Y.2d 875, 705 N.Y.S.2d 6, 726 N.E.2d 483 (2000) ["*Aetna II*"]; *Aetna Casualty and Surety Co. v. Certain Underwriters at Lloyd's London,* 176 Misc.2d 605, 676 N.Y.S.2d 727 (1998) ["*Aetna I*"]. Plaintiff argues that the doctrine of collateral estoppel, to which this Court is statutorily bound, 28 U.S.C. § 1738, precludes the relitigation in this action of issues resolved by the New York courts.

Although this Court has not been provided a copy of the documents at issue in the New York proceedings, it appears that at issue in those proceedings were minutes of the ECRG meetings from 1992 through 1994, as recorded by counsel. Apparently, the documents were inadvertently disclosed to Aetna and, upon the defendants' motion for return of the documents, the New York court concluded that the assertion of attorney-client privilege or the work product doctrine as to those minutes was not proper. *Aetna I,* 676 N.Y.S.2d at 730.[3]

Federal law, 28 U.S.C. § 1738, provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such state ... from which they are taken." The judicial decisions upon which plaintiff relies involved, as the parties appear to agree, different documents than those at issue in this case. The New York court in *Aetna I* specifically found that the ECRG conferences were organized

---

3. Plaintiff has asked that those documents also be produced to it in this action. While defendant concedes that its counsel in the New York litigation received copies of those documents from its co-defendant in those proceedings, both plaintiff and defendant agree that the documents are covered by a confidentiality order imposed by the New York court, a copy of which has not been provided to this Court. This Court will not, under these circumstances, require defendant to produce those documents in this action. This decision is without prejudice to the filing by plaintiff of a motion to compel specifically addressing these documents and the effect in this action, if any, of the confidentiality order imposed by the New York court.

for the purpose of formulating economic solutions beneficial to the entire London market, rather than to seek legal advice from counsel. *Id.*, at 733. Moreover, the New York court found no common legal—as opposed to commercial—interest among the ECRG members and therefore refused to treat them as a single or common client. *Id.*[4] Finally, the New York court held that the work product doctrine did not protect the documents because they were not prepared by counsel in anticipation of litigation but were, instead, the result of business discussions. The attorneys acted as "mere scriveners," and their minutes were therefore not entitled to protection. *Aetna II* unsealed the order issued in *Aetna I* in order to prevent "a number of common defendants in other related proceedings" from relitigating the issue of privilege.

■ Pursuant to 28 U.S.C. § 1738, this Court must accord to the decisions in *Aetna I* and *Aetna II* the same effect that the courts of New York would give those decisions. In New York,

[t]he doctrine of collateral estoppel, a narrower species of *res judicata*, precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same. Two requirements must be met for the invocation of the doctrine: (1) "[t]here must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action [and (2)] there must have been a full and fair opportunity to contest the decision now said to be controlling."

*Hickey v. Sinnott,* —— A.D.2d ——, 715 N.Y.S.2d 533 (2000), *quoting Ryan v. New York Tel. Co.,* 62 N.Y.2d 494, 500, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984); *Schwartz v. Public Adm'r of County of*

*Bronx,* 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969).

■ It is clear to this Court that the holdings in *Aetna I* and *Aetna II* were based on the particular documents at issue in those cases, *i.e.*, the minutes of counsel, and what those documents revealed about the topics of discussion at the ECRG conferences. Those minutes apparently reflected discussions of commercial, rather than legal, issues of interest to the participants, and the state courts' decisions followed in all respects from that finding.

By contrast, the documents at issue in this case reflect, as previously noted, discussions of legal matters of common interest to the participants. The challenged documents withheld by defendant in this case include information reflecting substantive legal advice by counsel. Thus, the issue resolved by the New York courts was not the same as that raised in this action, and even New York courts faced with the issue presently before this Court would not, in this Court's opinion, be required by their own doctrine of collateral estoppel to regard themselves as bound by the holdings in *Aetna I* and *Aetna II. See Hickey v. Sinnott.*

## C

Plaintiff also argues that, even if the New York decisions are not dispositive of the matter, this Court should reach a decision similar to that reached by the New York Supreme Court in *Aetna I.* Plaintiff also argues that, in disclosing this information at the ECRG conventions, attended by members who are not joint clients of the attorneys who participated in those conferences and who in fact have interests that diverge from each other, the substance of the discussions were not maintained in confidence and, for that reason as well, are not privileged.

■ In this diversity action, the state law of privilege governs defendant's claim of attorney-client privilege. F.R. Ev. 501; *Guy v. United Healthcare Corp.,* 154 F.R.D. 172, 177 (S.D.Ohio 1993).[5] Ohio law has long recognized the attorney-client privilege:

---

4. The court did suggest that it would apply the "common interest" privilege where the "underlying circumstances require that communications be protected, as with ordinary attorney-client matters, and the common legal interest impacts

potential litigation against all of the participants." *Aetna I,* at 733.

5. As it relates to defendant's claim of work product doctrine, which is not an evidentiary privilege but a procedural tool for managing discov-

Communications made by a client to his attorney with a view to professional advice or assistance are privileged; and courts will not require nor permit them to be divulged by the attorney, without the consent of his client, whose privilege it is. *Spitzer v. Stillings*, 109 Ohio St. 297, 303, 142 N.E. 365 (1924) quoting *King v. Barrett*, 11 Ohio St. 261 (1860), *Syllabus. See also* O.R.C. § 2317.02(A), Ohio R. Ev. 501. The privilege is "founded on the premise that confidences shared in the attorney-client relationship are to remain confidential. Only in this manner can there be freedom from apprehension in the client's consultation with his or her legal advisor." *Moskovitz v. Mt. Sinai Medical Center*, 69 Ohio St.3d 638, 660, 635 N.E.2d 331, *cert. denied sub nom. Figgie v. Moskovitz*, 513 U.S. 1059, 115 S.Ct. 668, 130 L.Ed.2d 602 (1994).

▮▮▮ The privilege may be waived by the client, however. *State v. McDermott*, 72 Ohio St.3d 570, 572, 651 N.E.2d 985 (1995); *State v. Post*, 32 Ohio St.3d 380, 513 N.E.2d 754 (1987); *Travelers Indemnity Co. v. Cochrane*, 155 Ohio St. 305, 98 N.E.2d 840 (1951). If the client expressly consents to a waiver of the privilege or if the client voluntarily testifies on the subject covered by the privilege, all communications relating to the same subject are divested of the protection offered by the privilege. *State v. McDermott*, 72 Ohio St.3d at 572, 651 N.E.2d 985. Under certain circumstances, a waiver of the privilege may also be found when "a client's disclosure to a third party of communications made pursuant to the attorney-client privilege breaches the confidentiality underlying the privilege." *State v. Post*, 32 Ohio St.3d at 386, 513 N.E.2d 754.[6]

This Court's research has failed to disclose any Ohio authority expressly considering the attorney-client privilege in the context of a joint defense or common clients. However, Ohio law clearly contemplates the possibility of joint representation of multiple clients. *See, e.g., Sarbey v. Natl. City Bk., Akron*, 66 Ohio App.3d 18, 27, 583 N.E.2d 392 (1990); *Zerner v. New Par*, 2000 WL 222150 (Stark Cy. Ct.App.2000) (unpublished).

▮▮▮ As recognized by numerous courts throughout the United States, the "joint defense privilege" protects communications between two or more parties and their respective counsel if they are engaged in a joint defense effort. *Metro Wastewater Reclamation v. Continental Casualty Co.*, 142 F.R.D. 471, 478 (D.Colo.1992). The party asserting the privilege must show that: "(1) the communications were made in the course of a joint defense effort; (2) the statements were designed to further the effort; and (3) the privilege has not been waived." *In re Bevill, Bresler & Schulman Asset Management Corp.*, 805 F.2d 120, 126 (3d Cir.1986). Moreover, the joint defense privilege requires that there be in existence "actual or potential litigation" or a strong possibility thereof at the time the entity consulted the lawyer. *In re Sealed Case*, 29 F.3d 715, 719 (D.C.Cir.1994). Where the privilege exists, disclosure of protected materials to friendly litigants in related cases or to others with friendly interests will not vitiate the privilege.

▮▮▮ Under the related "common interest" rule, attorneys or parties facing a common litigation opponent may exchange privi-

---

ery, federal law governs. *See* F.R. Civ. P. 26(b)(3).

**6.** The work product doctrine, on the other hand, "is distinct from and broader than the attorney-client privilege." *United States v. Nobles*, 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). It protects tangible and intangible materials reflecting the pattern of investigation, assembly of information, determination of relevant facts, preparation of legal theories, strategy planning, and mental impressions of the attorney. *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947). "The overriding purpose of both the attorney-client and work product privileges is to encourage the proper

functioning of the adversary system." *In re Antitrust Grand Jury*, 805 F.2d 155, 163 (6th Cir. 1986). The work product doctrine embodied in Rule 26 is not absolute, however. A party seeking discovery of protected materials may, upon a sufficient showing of need for the material and inability to obtain its substantial equivalent without undue hardship, obtain materials otherwise protected by the doctrine. F.R. Civ. P. 26(b)(3). Because this Court concludes that the challenged documents are cloaked with the protection afforded by Ohio's attorney-client privilege, it will not consider whether the work product doctrine also applies.

leged communications without waiving the privilege. *United States v. Under Seal*, 902 F.2d 244, 249 (4th Cir.1990); *Schachar v. American Academy of Ophthalmology, Inc.*, 106 F.R.D. 187, 191 (N.D.Ill.1985). The purpose behind this rule is "to protect the free flow of information from [the] client to [the] attorney" when a number of clients share a common interest in litigation. *United States v. Schwimmer*, 892 F.2d 237, 243–44 (2d Cir. 1989). The rule applies when the parties have a "common litigation opponent", *see, e.g., Schachar*, 106 F.R.D. at 191, or when information is exchanged between "friendly litigants" with similar interests. *Filanowski v. Wal–Mart Stores, Inc.*, 1999 WL 33117058, *1 (D.Me.1999); *Western Fuels Ass'n, Inc. v. Burlington Northern R.R. Co.*, 102 F.R.D. 201, 203 (D.Wyo.1984).

According to plaintiff, the members of the ECRG cannot invoke the protections of the "joint defense" or "common interest" application of the attorney-client privilege because those members did not in fact share a joint defense or common interest; the treaties in which each of the members participated differed in at least some respects. Moreover, plaintiff argues, because the ECRG members participated in different reinsurance contracts, they are unlikely ever to be parties to the same lawsuit. Thus, no attorney-client relationship ever arose or, if it did, the disclosure of otherwise protected information to the conference attendees breached the confidentiality in which such protected communications must be preserved. This Court disagrees and concludes that, as to those issues identified in the cross-consultation agreements and reflected in the documents identified in defendant's privilege log, the members of the ECRG shared interests sufficiently common or joint to create a need for full and frank communication between and among counsel and their clients. Moreover, while there is not an absolute congruence in litigation involving those members, all those members reasonably anticipated involvement in litigation in which those common issues, and their adoption of common positions on those issues, would arise. Finally, it is clear that the ECRG members shared the expectation that their communications between themselves and their counsel would be maintained in confidence. In short, the Court concludes that the challenged documents are protected by the attorney-client privilege and need not be produced to plaintiff.

Defendant's motion for a protective order is therefore GRANTED; plaintiff's motion to compel is therefore DENIED.