In re MOUNT VERNON PLAZA COM-
MUNITY URBAN REDEVELOPMENT
CORPORATION I, Debtor, Joint Ad-
ministration With Mount Vernon Plaza
Community Urban Redevelopment Cor-
poration II Mount Vernon Plaza Com-
munity Urban Redevelopment Corpora-
tion III Bryden Road Plaza, Inc.

Bankruptcy Nos. 2–86–03788
to 2–86–03791.

United States Bankruptcy Court,
S.D. Ohio, E.D.

Jan. 15, 1988.

Grady L. Pettigrew, Jr., Arter & Hadden, Columbus, Ohio, for debtors.

James H. Banks, Columbus, Ohio, for Bell Faction.

Janice Franke, Legal Aid Society of Columbus, Columbus, Ohio, for High Rise Tenants Council.

Joseph C. Winner, Murphy, Young & Smith, Columbus, Ohio, for official unsecured Creditors' Committee in Mt. Vernon Plaza Community Urban Redevelopment Corp. I.

Jerry Grier, Chief Counsel, 5.3, Dept. of Housing and Urban Development, Dennis R. Newman, Columbus, Ohio, for Neighborhood Development Corp.

### ORDER ON MOTION TO DISQUALIFY COUNSEL AND REQUEST FOR INJUNCTIVE RELIEF

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court upon a motion, filed on behalf of Mount Vernon Plaza Community Urban Redevelopment Corporation I, Mount Vernon Plaza Community Urban Redevelopment Corporation II, Mount Vernon Plaza Community Urban Redevelopment Corporation III, and Bry-

den Road Plaza, Inc., debtors in possession in these jointly administered Chapter 11 cases ("Debtors"). The motion seeks injunctive relief and an order from this Court disqualifying attorneys James H. Banks and James K. Simakis from serving as counsel to Estelle Porter, Gladys Bell and Elminie Rickman, and as rival counsel for the Debtors. The motion was opposed by Banks and Simakis and was tried to the Court. As James K. Simakis died during the pendency of the motion, this matter has become moot as it relates to him; references to him are hereby deleted.

These jointly-administered Chapter 11 cases, filed on September 26, 1986, and the companion case of Neighborhood Development Corporation ("NDC"), filed on October 15, 1986, have had a tortured and unusually bitter fight for survival even by bankruptcy reorganization standards. Much of the struggle has resulted from the continuation of pre-filing dissension among the members of the boards of trustees ("Trustees") which serve as the governing bodies for these non-profit corporations pursuant to Chapter 1702 of the Ohio Revised Code. Those board dissensions led to a split among the Trustees and to the Chapter 11 filings, the authorizations for which remain a major issue in these cases. The disagreements between the factions of the Trustees have been further complicated by marked conflict between the attorneys for each faction, further evidenced here by the disqualification motion. Unfortunately, the parties whose voices appear to have been inadequately heard are those of the commercial enterprises and the aged, handicapped, and family tenants occupying the commercial and residential rental properties owned and operated by the Debtors and NDC.

By way of background, the Chapter 11 petitions in these cases and in the NDC case were authorized by Daisy Flowers, Margaret Nelson, and Rhonda Tipton as Trustees ("Filing Trustees"). A signature line was indicated on the corporate authorizations for a fourth Trustee, Gladys Bell, but Bell did not execute those documents. A rival group of Trustees, including Gladys Bell as well as Estelle Porter and Elminie Rickman ("Non–Filing Trustees"), have contested the propriety of these bankruptcy filings and have questioned the Filing Trustees' assertions that Porter and Rickman are not properly elected existing Trustees of the Debtors or NDC. That battle is currently the subject of an adversary action pending in the NDC case. This motion for disqualification was filed on behalf of the Debtors, through the Filing Trustees and is directed against Banks as the attorney for the Non-Filing Trustees and rival counsel for the Debtors and NDC.

## FINDINGS OF FACT

The Court finds the following relevant facts from the testimony, evaluation of the credibility of the witnesses, and examination of the parties' exhibits:

1. Banks represented Flowers individually in a variety of matters unrelated to the Debtors or NDC. That representation began no later than 1981 and continued as late as May, 1986.

2. Banks served as general counsel to the Debtors and NDC from on or about December 20, 1985 until resigning from that position in September, 1986. The effectiveness of that resignation is contested.

3. Some of the litigation matters in which Banks represented the Debtors and/or Flowers in her capacity as an officer or trustee of the Debtors or NDC, include:

(a) an action by a former administrator of the rental properties alleging unlawful termination of employment;

(b) a suit initiated by NDC, the Debtors, Bell, Flowers, Nelson and Porter against other present and former trustees or individuals who were related in some manner to Realty Resources Corporation, an entity which attempted to purchase the Debtors' properties;

(c) an action by NDC and the Debtors against Flowers, Nelson, Banks and Simakis for alleged harm resulting from the deposit of the Debtors' housing assistance payments in a Delaware County bank for the purpose of avoiding the

garnishment order of a creditor ("Action 86CV–03–1374"); and

(d) an action by that garnishing creditor against NDC, the Debtors, and various trustees.

4. Banks sued NDC and several individuals related to NDC, not including Flowers, for fees billed to Flowers for which Banks asserted Flowers had a right of indemnity from NDC.

5. Banks counseled Flowers in her capacity as a trustee and officer of the Debtors and NDC. In that connection he advised her regarding management problems, disagreements among board members and concerns relating to her duties as a trustee. In that representation his clients were the Debtors or NDC.

6. Although not directed to that issue, alignment of the parties in Action 86CV–03–0174 reflected in part a factionalization among the members of the boards of trustees of the Debtors and NDC. At least part of the faction authorizing that suit against Banks, Simakis, Flowers, Nelson and Porter includes persons now aligned as a faction against the Filing Trustees and presently represented by Banks. Banks was a co-defendant in Action 86CV–03–0174 as well as the attorney for Flowers, Nelson and Porter. The substance of that action, however, is not at issue in this case.

7. Flowers has not consented to or otherwise waived any objection to Banks' representation of the rival faction or to the potential use of any information and confidences gleaned from her or from the Debtors or NDC.

## ISSUES OF LAW

The issue before the Court is whether Banks may represent the rival faction of the boards of trustees and by implication, the Debtors and NDC, where that representation may be adverse to the interests of Flowers personally in her efforts to exercise her powers and duties as a trustee and officer of the Debtors and NDC. It is also asserted that Banks' current representation may require the use of confidences and information harmful to former client Flowers, the Debtors and NDC in the attempt to obtain a judicial determination of which persons are properly elected, retained Trustees whose actions may legally bind the various corporations. Any use of such confidences in that matter would be prohibited by ethical considerations.

## CONCLUSIONS OF LAW

A moving party seeking to disqualify an attorney for a conflict of interest has the burden of showing:

(1) "the moving party is a former client of the adverse party's counsel;

(2) there is a substantial relationship between the subject matter of the counsel's prior representation of the moving party and the issues in the present lawsuit; and

(3) the attorney whose disqualification is sought had access to, or was likely to have had access to, relevant privileged information in the course of his prior representation of the client."

*Evans v. Artek Systems Corp.*, 715 F.2d 788 (2nd Cir.1983).

The primary purpose for disqualification, if all tests are met, is to protect the confidentiality of information received from the former client, even if such information is only potentially involved in the current action. *In re Dayco Corp. Derivative Securities Litigation*, 102 F.R.D. 624 (S.D.Ohio 1984). Another purpose is to protect the integrity of the adversarial process. *Board of Educ. of New York City v. Nyquist*, 590 F.2d 1241 (2nd Cir.1979). Those concerns are expressed in Canons 4, 5 and 9 of the Code of Professional Responsibility, applicable to attorneys practicing in this court by Order 81–1 of the District Court of the Southern District of Ohio. Rule IV(B) of Order 81–1 incorporates by reference the Code of Professional Responsibility, as adopted by the Supreme Court of Ohio. The relevant canons, ethical considerations and disciplinary rules of that Code are set forth as follows:

## CANON 4

A Lawyer Should Preserve the Confidences and Secrets of a Client

\*     \*     \*     \*     \*     \*

## ETHICAL CONSIDERATIONS

EC 4–5. A lawyer should not use information acquired in the course of the representation of a client to the disadvantage of the client and a lawyer should not use, except with the consent of his client after full disclosure, such information for his own purposes. Likewise, a lawyer should be diligent in his efforts to prevent the misuse of such information by his employees and associates. Care should be exercised by a lawyer to prevent the disclosure of the confidences and secrets of one client to another, and no employment should be accepted that might require such disclosure.

\* \* \* \* \* \*

## DISCIPLINARY RULES

DR 4–101(B). Except when permitted under DR 4–101(C), a lawyer shall not knowingly:

(1) Reveal a confidence or secret of his client.

(2) Use a confidence or secret of his client to the disadvantage of the client.

(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.

\* \* \* \* \* \*

## CANON 5

A Lawyer Should Exercise Independent
Professional Judgment on Behalf
of a Client

## CANON 9

A Lawyer Should Avoid Even the
Appearance of Professional
Impropriety

■ As a threshold matter this Court finds that once these issues have been raised, it has not only the right, but also the duty to insure that attorneys who practice before this Court comply with the Code of Professional Responsibility. *The Ashville Bank v. Auto Owners Ins. Co.,* C–2–83–615 (S.D.Ohio 1985) (unreported opinion of Kinneary, D.J.). The Court's inherent power to supervise its own affairs is the basis for that authority. 11 U.S.C. § 105(a). That concern is balanced with the recognition that parties generally have the right to select their own counsel and any attempted interference with that right places the burden upon the party seeking the disqualification to establish good cause for such action. The standing of the Debtors, as the moving entities potentially harmed by the representation alleged to be adverse, is properly established. *Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562 (2nd Cir.1973).

■ Banks argues that the disqualification motion is an attempt to "end-run" the substantive issue of the proper constitution of the boards of trustees of the Debtors and NDC. Regardless of the merits of that assertion and despite the urging of the Filing Trustees for a decision, the Court finds that the unresolved status of the adversary action causes the disqualification motion to be premature. After serious consideration of the issues raised, examination of the elements of proof for disqualification on the grounds of conflict of interest, and extensive research into applicable case law, the Court concludes that resolution of the conflict issue necessarily turns upon whether or not the Filing Trustees or the Non–Filing Trustees constitute a majority of the members of the Debtors' boards of trustees. If the Non–Filing Trustees prevail in the adversary action in NDC requesting a determination of that issue, that faction will have the power to hire Banks. As he then will be representing the Debtors, such representation could not be adverse to the interests of the Debtors. Should it be found that the Non–Filing Trustees do not constitute a majority of the Trustees, Banks ceases to be even alleged counsel for the Debtors. At that point any alleged conflict between his current representation of the Non–Filing Trustees and his former representation of the Debtors becomes ripe for decision.

The Court further finds that no conflict of interest currently exists between Banks' representation of the Non–Filing Trustees or purported representation of the Debtors, and his former representation of Daisy Flowers as an individual, rather than in her representative capacity. Banks' past rep-

resentation of Flowers as an individual was unrelated to issues or information currently in dispute. Further, in his representation of Flowers as a trustee or officer of the Debtors, Banks' clients were the Debtors and NDC and not Flowers. Therefore, any confidences disclosed to Banks would not be privileged as to other members of the boards of trustees. *Wayland v. Shore Lobster & Shrimp Corp.*, 537 F.Supp. 1220 (S.D.N.Y.1982).

Based upon the foregoing, the Court denies the motion of the Debtors, through the Filing Trustees, for disqualification of James H. Banks and for injunctive relief. Such denial is without prejudice, however, to renewal of the motion on a prospective basis after a decision has been made in the adversary action related to the composition of the boards of trustees of the Debtors and NDC.

IT IS SO ORDERED.