**MORFORD, Appellee,**

v.

**MORFORD, Appellant.**

[Cite as *Morford v. Morford* (1993), 85 Ohio App.3d 50.]

Court of Appeals of Ohio,
Lawrence County.

No. 91 CA 29.

Decided Jan. 12, 1993.

52

*McCown & McCown* and *Frank J. McCown,* for appellee.

*Moore, Wolfe & Bentley* and *Richard F. Bentley,* for appellant.

GREY, Judge.

This is an appeal from a judgment of the Lawrence County Common Pleas Court. The court found Warren N. Morford, Jr., in contempt for failure to pay child support. We reverse.

Warren N. Morford, Jr., formerly a member of the Ohio Bar, and Kathy Morford were divorced on March 27, 1989. Kathy received custody of the parties' two children and Morford was ordered to pay $606.54 per month as child support. Morford did not pay support and on June 30, 1989, the Lawrence County Child Support Enforcement Agency ("CSEA") filed a motion for contempt on Kathy's behalf.

On September 18, 1989, the court granted a lump sum judgment on the arrearage but did not rule on the contempt charge. Despite the court's finding, Morford still did not pay and a second contempt motion was filed. At the second hearing, the court found that Morford's circumstances had substantially changed and reduced the support to $440.76 per month. The court again awarded a lump sum judgment on the arrearage, but again did not find Morford in contempt.

Morford still did not pay as ordered and a third contempt motion was filed. This time, the court noted that Morford's payment record was unsatisfactory. In light of his claims of no income, the court observed that with his legal education, he knew how to seek a reduction. He was found in contempt, sentenced to thirty days and ordered to pay a $300 fine, with the fine suspended. Morford appeals, designating six assignments of error.

 We begin by noting that there is a difference between civil contempt and criminal contempt. Civil contempt is where the sanction is imposed to coerce the contemnor to comply with the court's order, and is established by using the clear and convincing evidence standard. *Con–Tex, Inc. v. Consolidated Technologies, Inc.* (1988), 40 Ohio App.3d 94, 531 N.E.2d 1353. Criminal contempt is where the court imposes a sanction as punishment for a past failure, *Schrader v. Huff* (1983), 8 Ohio App.3d 111, 8 OBR 146, 456 N.E.2d 587, and, thus, the contemnor is entitled to all the rights afforded to a criminal defendant.

In many cases, it is difficult to characterize the contempt as either civil or criminal because of overlapping considerations. For example, in this case, the sanction might be construed as an attempt to get appellant to pay his child support or a punishment by a court which was fed up with appellant's failure to pay support as ordered. We decline to characterize the contempt in this case because the characterization will have no bearing on the outcome of our decision.

FIRST ASSIGNMENT OF ERROR

"The trial court erred when it entered a sanction that did not afford Defendant–Appellant an opportunity to purge himself of his contempt."

Morford argues that a party must be given an opportunity to purge himself of a prior finding of contempt. He cites *Tucker v. Tucker* (1983), 10 Ohio App.3d 251, 10 OBR 364, 461 N.E.2d 1337, in support. Tucker was found guilty of contempt on the first filing of the motion and sentenced. The sentence was suspended conditioned on future conduct. As such, we find *Tucker* inapplicable here.

 Here, the record shows that Morford had been charged with contempt on two previous occasions. On both occasions, the court did not rule on the question of contempt, but did indicate its intention that the support order would be enforced. A party cannot continually ignore a court's order until he is found in

contempt and then purge himself by doing no more than originally ordered, and by so doing divest the court of the power to punish his contempt. Contempt may be appropriate even though all arrearages have been paid. *Roach v. Roach* (1989), 61 Ohio App.3d 315, 572 N.E.2d 772. We find the trial court gave Morford ample opportunity to purge himself prior to the third contempt citation.

Morford's first assignment of error is not well taken and is overruled.

SECOND ASSIGNMENT OF ERROR

"The trial court's finding of contempt is against the manifest weight of the evidence."

THIRD ASSIGNMENT OF ERROR

"The trial court erred in finding contempt when a good faith inability to comply is a defense."

FIFTH ASSIGNMENT OF ERROR

"The moving party in the contempt proceedings, Plaintiff–Appellee, failed to meet her burden of proof."

In his second, third and fifth assignments of error, Morford advances a weight of the evidence argument. Judgments supported by some competent, credible evidence going to all the elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *Masitto v. Masitto* (1986), 22 Ohio St.3d 63, 22 OBR 81, 488 N.E.2d 857.

A *prima facie* showing of contempt is made when the moving party establishes the divorce decree and evidence of nonpayment according to its terms. *Rossen v. Rossen* (1964), 2 Ohio App.2d 381, 31 O.O.2d 589, 208 N.E.2d 764. The burden then shifts to the defendant to establish any defense he may have for nonpayment. *Rossen, supra.* The intent of the violator is not a prerequisite, *Pugh v. Pugh* (1984), 15 Ohio St.3d 136, 15 OBR 285, 472 N.E.2d 1085, but the court may look to see if the party has attempted to comply or attempted to flout the order of the court.

Here, there is a *prima facie* showing of contempt and the burden shifted to Morford. The court obviously concluded that he had either not obeyed its orders to seek work or was not reporting all of his income. His payment record did not show a good faith effort to comply.

Kathy testified that her ex-husband was working forty hours a week as a paralegal and that he was being paid on a subcontract to avoid garnishment. Apparently, the court found her testimony more credible. The court pointed out that even at a minimum wage Morford could have been earning more than he

claimed. The weight of the evidence indicates that there was no attempt, much less a good faith attempt, to comply.

Morford's second, third, and fifth assignments of error are not well taken and are overruled.

FOURTH ASSIGNMENT OF ERROR

"The contempt proceeding is fatally defective as it did not afford Defendant–Appellant the constitutional guarantees of due process, nor did it comport with Ohio law."

■ Morford argues that he was denied due process of law. Specifically he argues that he should have been afforded a plenary proceeding as required under the United States and Ohio Constitutions. We find any error here was waived.

In opening, Morford's counsel stated: "I've discussed this matter [how to proceed] with Mr. Morford and he has agreed we'll be proceeding on statements of counsel." In effect, Morford waived his due process rights and decided to proceed differently.

He also argues that the court did not limit its consideration to the statements of counsel, but instead made improper inferences regarding his work and payment record. The court noted that while Morford claimed to be earning only $4,000 a year, a person earning the minimum wage would make $8,700 a year. This is not an improper inference, but more of a comment on Morford's credibility on the issue of his inability to pay.

Morford's fourth assignment of error is not well taken and is overruled.

SIXTH ASSIGNMENT OF ERROR

"The trial court erred in proceeding over timely objection of Defendant–Appellant that the adverse party was represented by the attorney that had represented him in the parties' divorce."

Morford asserts a conflict of interest because appellee's attorney, J.B. Collier, Jr., had previously represented him in this divorce action. We agree.

Collier first made an appearance as counsel in this case when he filed an answer on behalf of Morford on December 21, 1989. Collier signed the divorce decree as attorney for the defendant in an entry dated March 27, 1989. Less than four months later, on July 20, 1989, Collier switched sides. On that day, as attorney for CSEA, he filed a motion on behalf of appellee, Kathy Morford.

■ An attorney may not begin by representing one party in a case and then later represent the other, adverse party.

■ Canon 9 of the Code of Professional Responsibility states: "A lawyer should avoid even the appearance of professional impropriety." See, also, EC 5–

1, loyalty to client. In cases involving potential conflicts of interest, courts typically employ the "substantial relationship" test. An attorney may not accept employment against a former client where there is a substantial relationship between the existing controversy and the prior representation. *White Motor Corp. v. White Industries* (1978), 60 Ohio App.2d 82, 87, 14 O.O.3d 64, 67, 395 N.E.2d 1340, 1344. The "substantial relationship" test is applied only where the representation of a former client has been terminated and the parameters of the relationship have been fixed. *Id.*

The "substantial relationship" test requires disqualification whenever there is a substantial relationship between the subject matter of the former representation and that of subsequent representation. *Sarbey v. Natl. City Bank, Akron* (1990), 66 Ohio App.3d 18, 583 N.E.2d 392, headnote two. The burden of proof rests with the former client. *Id.* The primary purpose of disqualification is to protect confidentiality of information, even if the information is only potentially involved in the current action. *In re Mount Vernon Plaza Community Urban Redevelopment Corp. I* (1988), 85 B.R. 762.

The record shows that Collier represented Morford at the time of the divorce when the rights and duties of the parties were established. Even if Collier's representation of Morford ended after the March 27, 1989 decree, when he began to represent CSEA and its clients, he should have declined to act as counsel in the Morford case. Morford's sixth assignment of error is well taken and is sustained.

## SEVENTH ASSIGNMENT OF ERROR

"The trial court abused its discretion in imposing excessive punishment."

Morford argues that, since this is his first offense, the sentence is excessive.

R.C. 2705.05(A) states:

"In all contempt proceedings, the court shall conduct a hearing. At the hearing, the court shall investigate the charge and hear any answer or testimony that the accused makes or offers and shall determine whether the accused is guilty of the contempt charge. If the accused is found guilty, the court may impose any of the following penalties:

"(1) For a first offense, a fine of not more than two hundred fifty dollars, a definite term of imprisonment of not more than thirty days in jail, or both."

The language of the statute is clear. In light of Morford's continuing refusal to make any attempt at paying support, the trial court was quite justified in imposing the thirty-day sentence. While the sentence is not excessive, the fine is. Although the fine was suspended, the court erred in imposing a greater fine than is permitted under the statute. Morford's seventh assignment of error is well taken and is sustained.

██ We turn now to the question of disposition in this case. We believe the only proper action for this court is to remand this case for a new hearing. The improper fine does not mandate this, but the problem of having an attorney representing one side and then the other in the same case is so egregious as to require a new hearing.

Appellee argues that there was no showing of prejudice. In every profession certain minimal standards must be maintained without regard to the prejudicial or harmful effect on the client. Medicine as a profession has established sanitary practice as a standard for all physicians. A surgeon who operates with unsterilized instruments is in violation of those standards whether or not the patient is affected by some iatrogenic condition. Professionalism does not contemplate a "no harm, no foul" standard of practice.

In this case, appellant Morford has been sentenced to thirty days in jail and we find no error in that. However, that sentence was imposed at a hearing where his ex-wife was represented by his former attorney. This is not proper and cannot be allowed.

We are aware that reversing and remanding is not likely to change the result in this case, except that the result will have been obtained in accord with the Code of Professional Responsibility. Maintaining standards is necessary, however, and, therefore, we must reverse and remand.

*Judgment accordingly.*

STEPHENSON, P.J., concurs separately.

HARSHA, J., concurs in judgment only.

STEPHENSON, Presiding Judge, concurring.

I concur in the majority judgment and in the principal opinion insofar as its analysis of, and reversal on, appellant's sixth assignment of error. The record indicates that current counsel for CSEA had previously represented appellant on these matters when the divorce decree was entered in March 1989. However, beginning the following July and continuing through October 1989 and October 1991, counsel has gone after his former client for violating the very order which counsel helped negotiate on his behalf. As aptly noted by Judge Grey, standards must be maintained and I am simply too uncomfortable with the course of these events to allow them to stand. That being said, I would disregard the remaining assignments of error pursuant to App.R. 12(A)(1)(c) and dispose of the case on this issue alone.

The principal opinion, however, goes on to address several other matters raised by appellant. While these matters are not particularly pertinent to the judgment

of reversal, our decision to remand this case for further proceedings compels me to express certain reservations with respect to the contempt issue(s). The principal opinion declines to characterize the contempt in the cause *sub judice* as either civil or criminal but then goes on to hold that, in any event, appellant was given sufficient opportunity to purge the said contempt. I am not persuaded that this was the case.

To begin, contempt proceedings for failure to pay child support are generally *civil in nature* as any potential jail sentence is designed merely to encourage payment. See Baldwin, Ohio Domestic Relations Law (1987) 398–400, Section 39.03(A); 48 Ohio Jurisprudence 3d (1983) 445, Family Law, Section 1226; 17 Ohio Jurisprudence 3d (1980) 324, Contempt, Section 6; see, also, 24 American Jurisprudence 2d (1983) 1052, Divorce and Separation, Section 1067. Punishment imposed upon an adjudication of civil contempt must afford the contemnor an opportunity to purge himself of contempt. *Fry v. Fry* (1989), 64 Ohio App.3d 519, 523, 582 N.E.2d 11, 13; *Nardone v. Nardone* (1989), 63 Ohio App.3d 798, 801, 580 N.E.2d 448, 449; see, also, *Cleveland v. Ramsey* (1988), 56 Ohio App.3d 108, 110, 564 N.E.2d 1089, 1091. The judgment of contempt entered below does not afford appellant such an opportunity and, therefore, would appear deficient. As aforesaid, the principal opinion concludes that appellant was given "ample opportunity to purge himself" prior to the third contempt motion. I disagree. The lower court's ruling on these prior motions never adjudicated appellant in contempt and, thus, there was nothing to purge. Appellant was held in contempt of court only after the judgment entered on November 22, 1991, and at that time should have been afforded the opportunity to purge himself of such contempt.