DECISION
Defendant-appellant, Randall D. LeuVoy, D.O., appeals from an order of the Franklin County Court of Common Pleas, Division of Domestic Relations, in post-decree proceedings between appellant and his former wife, plaintiff-appellee, Barbara J. LeuVoy.
The parties' marriage was terminated by a judgment entry of divorce in July, 1992. Barbara was awarded custody of the parties' two minor children, and appellant was to pay her a total of $1,650 per month plus poundage for child support. In addition, the decree ordered appellant to pay spousal support at a rate of $1,900 per month through December 31, 1992, increasing to $2,000 per month until December 31, 1993 and thereafter $2,100 per month to terminate upon appellee's death, remarriage, or their youngest child entering the first grade, whichever first occurred. Appellant was ordered to maintain medical coverage for the children and pay out-of-pocket medical expenses incurred on behalf of the children. In the event he failed to pay spousal support as ordered, appellant was to be responsible for the monthly payments on appellee's personal automobile, which was transferred to her under the terms of the separation agreement. As long as he remained current on his support obligations, appellant was allocated the federal income tax exemptions for the parties' children.
Appellee filed on November 20, 1995, a motion seeking a contempt finding against appellant for failure to pay child support. On December 13, 1995, appellant filed a motion to modify child support, and on July 30, 1996, appellee filed a second motion in contempt, based upon appellant's failure to pay spousal support and comply with various other terms of the decree. On July 31, 1997, appellant filed a motion to terminate spousal support due to the youngest child entering first grade.
The matters were referred for hearing before a magistrate, and after extensive testimony (and twelve months' reflection) the magistrate issued a decision, including findings of fact and conclusions of law, generally finding for appellee on most issues. The magistrate found appellant guilty of contempt for his past failure to pay child support. The magistrate made a separate finding of contempt with respect to appellant's failure to pay spousal support. The magistrate, in addressing appellant's motion to modify child support, found appellant to be voluntarily underemployed, imputed an annual income of $158,000 to him, and increased child support to $1,831.42 per month, effective on the December 13, 1995 filing date of appellant's motion to modify child support. The magistrate granted appellant's motion to terminate spousal support, based upon the parties' stipulation that their youngest child had entered first grade, thus triggering termination of spousal support under the terms of the divorce decree.
Pursuant to the contempt findings, the magistrate sentenced appellant to ten days in jail, with the opportunity to purge based upon several conditions. First, appellant was to pay appellee $2,408 within sixty days. It is unclear which of appellant's various financial delinquencies this sum is intended to address. Appellant was further ordered to liquidate support arrearages at the rate of $1,250 per month, and pay appellee $7,500 for her attorney fees in the various post-decree proceedings, also within sixty days. In addition, because the magistrate found that appellant had improperly claimed the parties' children as exemptions, appellant was ordered to amend his 1995 federal and state tax returns within thirty days to reflect that he was not entitled to claim the exemptions.
Based upon the report of the Franklin County Child Support Enforcement Agency ("FCCSEA"), the magistrate found that appellant had accumulated significant arrearages. The magistrate determined that from August 1995 to September 1997, appellant owed $52,500 in spousal support and $44,969 in child support. The magistrate noted that appellant had paid during this period only $7,050, but that it was impossible to determine how these payments by appellant should be allocated between spousal support and child support. The total arrearages from August 1, 1995, through September 1, 1997, giving rise to the contempt findings, were set at $90,419.
Appellant filed objections to the magistrate's report, which were overruled by the trial court in a judgment entry entered June 30, 1999, adopting the magistrate's decision. Appellant has timely appealed and brings the following five assignments of error:
 I. THE TRIAL COURT ERRED IN RULING THAT DEFENDANT WAS VOLUNTARILY UNDEREMPLOYED AS A RESULT OF HIS CINCINNATI MEDICAL PRACTICE BEING INVOLUNTARILY CLOSED BY JUDICIAL ACTION OF A BUSINESS CREDITOR.
 II. THE TRIAL COURT ERRED BY `IMPUTING INCOME' TO DEFENDANT BASED ON DEFENDANT'S PRIOR YEAR'S TAX RETURN THAT DID NOT REFLECT EARNINGS IN THE COMMUNITY WHERE DEFENDANT WAS RESIDING AND FAILING TO FOLLOW ALL THE CRITERIA OF 3113/215(A)(5).
 III. THE TRIAL COURT ERRED IN REFUSING TO DETERMINE THE AMOUNT OF DEFENDANT'S TOTAL PAYMENTS THAT WERE CHILD SUPPORT AND THEN FINDING DEFENDANT IN CONTEMPT FOR FAILURE TO COMPLY WITH THE CHILD SUPPORT ORDER WHEN THE TOTAL PAYMENTS MADE BY DEFENDANT EXCEEDED THAT REQUIRED FOR CHILD SUPPORT.
 IV. THE TRIAL COURT'S PURGE ORDER AGAINST DEFENDANT IS AN ABUSE OF DISCRETION.
 (A) THE ORDER THAT DEFENDANT AMEND HIS TAX RETURNS TO DELETE CLAIMING THE CHILDREN WHILE REFUSING TO ALLOCATE THE FUNDS PAID IN 1995 BETWEEN ALIMONY AND CHILD SUPPORT IS ERROR;
 (B) CALCULATING `ARREARAGES' BASED ON A TIME PERIOD THAT POST DATES THE FILING DATE OF THE CONTEMPT MOTION AND ISSUE A PAY ORDER BASED ON THOSE CALCULATIONS IS ERROR;
 (C) ORDERING DEFENDANT TO PAY IN EXCESS OF $10,000.00 WITHIN 60 DAYS WHEN DEFENDANT IS IN BANKRUPTCY AND HAS NO ASSETS FROM WHICH TO MAKE THE PAYMENT IS AN ABUSE OF DISCRETION.
 IV. THE ORDER THAT DEFENDANT PAY $7,500.00 IN ATTORNEY FEES WITHIN 60 DAYS WHICH EXCEEDS DEFENDANT'S ABILITY IS ERROR.
A finding of civil contempt will not be reversed on appeal absent an abuse of discretion on the part of the trial court. Holcomb v. Holcomb (1989), 44 Ohio St.3d 128. The term "abuse of discretion" connotes more than mere error of law or judgement; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217. At the hearing, appellee presented evidence demonstrating both elements of a prima facie case of contempt: the existence of a divorce decree and evidence showing noncompliance by appellant with the terms of that decree. Morford v. Morford
(1993), 85 Ohio App.3d 50. Once appellee as the moving party had established both elements, the burden shifted to appellant to put forth a defense for his failure of payment. Id.
Appellant's first assignment of error asserts that the trial court erred in finding that he was underemployed; appellant's second assignment of error asserts that the trial court erred when, pursuant to its finding that appellant was voluntarily underemployed, it imputed income to appellant in an amount which was not based upon the factors in the community where appellant was currently residing. The two issues present interrelated issues and draw upon similar factual aspects of the case, which will be presented together.
The magistrate found that appellant is an osteopath licensed to practice medicine in Ohio since 1987. At the time of the divorce in 1992, appellant was employed in Cincinnati by Over the Rhine Family Practice ("OTR") and was paid $131,000 per year plus productivity bonuses. OTR was then owned by Dr. Bernard Masters and employed several physicians at the Cincinnati office. In addition, Dr. Masters appears to have owned several other medical practices. On July 1, 1994, appellant purchased OTR from Dr. Masters. The purchase agreement required appellant to make monthly payments to Dr. Masters in excess of $23,000. After purchasing OTR, appellant continued to pay himself the same salary and receive bonuses as he had when working under Dr. Masters' ownership. Appellant eventually became delinquent on his payments to Dr. Masters under the purchase agreement, and Dr. Masters repossessed the practice in August 1995.
Prior to the loss of OTR, appellant in early 1995 undertook to open another medical practice in Lancaster, Ohio, the hometown of his new wife Angela. Lancaster Family Care, Inc. ("LFC") was incorporated and rented space, and according to appellant's testimony, the practice was started from scratch and he counted on drawing income from OTR to finance the start-up of the LFC practice. After the repossession of OTR by Dr. Masters, appellant continued to concentrate his efforts on building the new practice, and his income accordingly fell sharply. For the months of August 1995 through December 1995, the magistrate found that appellant's income was a total of $900 for the entire five months. The gross receipts of LFC thereafter experienced steady growth, but appellant nonetheless claimed an income of only $8,000 on his 1996 tax return.
Pursuant to R.C. 3113.21(5)(A), a court can impute income to a party where it finds that the party is voluntarily underemployed. The determination is a factual one which will hinge upon the circumstances of the individual case. Rock v. Cabral
(1993), 67 Ohio St.3d 108. "The fact that the obligor's income has been reduced as a result of his or her voluntary choice does not necessarily demonstrate voluntary underemployment. The test is not only whether the change was voluntary, but also whether is was made with due regard to the obligor's income producing abilities and her or his duty to provide for the continuing need of the child or children concerned." Woloch v. Foster (1994), 98 Ohio App.3d 806,811.
The magistrate in the present case found that appellant was underemployed and income should be imputed to him based upon a variety of factors. The magistrate noted that the failure of OTR, based upon the documentary evidence and testimony at the hearing, was at least accelerated and perhaps entirely caused by appellant's apparent lack of interest in salvaging the practice, either through better management of the practice finances or working out an arrangement with Dr. Masters. The magistrate further noted that appellant withdrew substantial amounts of money from OTR in order to finance the development of LFC, and that immediately before defaulting on payments to Dr. Masters, several unexplained large disbursements were made from OTR accounts in favor of LFC or unknown payees. The magistrate also examined the financial status of OTR through appellant's period of ownership, and found that certain alleged decreases in revenue advanced by appellant as the cause of his default, particularly a decrease in "capitation payments" from a health insurance company, did not substantiate the alleged financial distress which prompted appellant to default his purchase of OTR. Rather than focusing on reestablishing the solvency of OTR, appellant accelerated his diversion of OTR resources to the start-up of LFC. After repossession of OTR, appellant did not seek comparable salaried employment as a physician either in the Cincinnati or Lancaster area. He concentrated full-time on developing the LFC practice with the consequent predicable decline in income.
Based upon the voluminous documentary evidence and the testimony of the parties, including appellant's contradictory or inconsistent testimony which the magistrate found in many respects not credible, the magistrate concluded that the loss of OTR was not an involuntary act by appellant, and that he was, based upon the loss of OTR and his decision, not to pursue comparable employment elsewhere, "voluntarily underemployed" within the meaning of R.C. 3113.215(A)(5). There is ample, credible documentary evidence in the record to support this conclusion by the magistrate, and, with respect to the testimony at trial, we note that the weight to be given the evidence and the credibility of the witnesses are primarily to be determined by the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230.
While appellant argues on appeal that he could not control Dr. Masters' actions in repossessing the OTR practice, that was merely the culmination of a series of voluntary decisions by appellant which led to the decrease in income which he experienced. Thereafter, appellant's voluntary choice not to seek employment at a salary commensurate with a physician of his experience, shows even greater lack of "due regard to his income producing abilities and his duty to provide for the continuing needs of his children," pursuant to Woloch, supra. We accordingly find that the trial court did not err in finding that appellant's purchase and subsequent loss of OTR, and decision to start up LFC, constituted conduct leading to voluntary underemployment on his part. Appellant's first assignment of error is accordingly overruled.
Appellant's second assignment of error asserts that, if appellant is found to be underemployed, the trial court erred in the basis upon which it determined the income imputed to appellant for purposes of calculating child support. The magistrate found that the most recent reliable income information was appellant's 1994 tax return, showing an income of $158,205. The magistrate also relied upon evidence introduced regarding employment potential, earnings, occupational qualifications, and prevailing job opportunities and salary levels for similarly qualified physicians. The magistrate specified that this was taken with respect to "the community in which defendant resided" but did not specify whether this was Cincinnati or Lancaster. In deciding to impute a higher income to appellant than that which he claimed during the period covered by the contempt motion, the magistrate further noted that there was ample evidence that appellant had manipulated the finances of LFC in order to minimize his own income and consequently his exposure for support purposes. The magistrate noted that numerous very substantial personal expenses were paid for appellant directly by the practice, and that appellant's new wife Angela had received distributions in various forms totaling $75,465 from LFC. One of the more notable personal expenditures by LFC on behalf of appellant and Angela was a $12,088 down payment on a land contract for property they purchased as well as automobiles, day care expenses, and various payments to Angela's family members who were not employees of LFC. The magistrate noted that Angela reported an income of $13,482 in wages in 1996 and $21,519 in dividends from LFC despite the fact that she was not a shareholder. Further manipulation of LFC finances by appellant and his wife continued into 1997.
The evidence clearly supports the magistrate's conclusion that income should be imputed to appellant for the period in question. Appellant asserts upon appeal, however, that the reliance by the magistrate on the 1994 tax return as a basis for computing imputed income is inappropriate because it does not represent income earned in the community where appellant resided, since he had moved from Cincinnati to Lancaster in the interim, and the magistrate disregarded later, lower income figures furnished by appellant from his new practice in his new city of residence.
Appellant's earning potential cannot on the present facts be computed based upon his later year tax return after the start-up of LFC and consequent drop in earnings. Once appellant was found to be voluntarily underemployed, a determination which we find accurate, appellant's present actual income is largely not probative of what his imputed income should be. To the contrary, the trial court had before it evidence concerning earning potential of comparably situated and qualified physicians. While there is some question whether this represented earning potential in Lancaster, appellant presented nothing other than his own tainted financial results in rebuttal. In the absence of other evidence to substantiate that appellant is no longer capable of earning his prior income, we find that the trial court did not err in attributing to him his earnings from the last year from which reliable records are available. Rossi v. Rossi (1998), Franklin App. No. 97AP-1584, unreported. Appellant's second assignment of error is accordingly overruled.
Appellant's third assignment of error asserts that the trial court erred in refusing to allocate, as either child support or spousal support, those payments actually made by appellant during the period covered by the contempt findings. Appellant also argues that for 1995 he paid in excess of $26,000 in support, which would more than have covered his child support obligation for that year.
The trial court found appellant in contempt due to his failure to make both child support and spousal support payments for the period covered from August 5, 1995, through September 1, 1997. The arrearage was calculated at $90,419. FCCSEA records introduced at the hearing established that appellant had paid during this time period a total of $7,050. Even if this total amount were applied towards child support for the last five months of 1995, appellant would still not have met his child support obligation for that part of 1995 covered by the child support contempt finding. Appellant cannot now argue that amounts paid by him through the first part of 1995, which coincided with both his child support and spousal support obligations for that period, should now be applied entirely to his 1995 child support obligation. Because the amounts paid by appellant during the period covered by the contempt findings was inadequate to satisfy either his child support or spousal support obligations under the decree, the trial court had a proper basis for finding appellant in contempt, both for 1995 and subsequent years, on both his child and spousal support obligations.
With respect to the trial court's refusal to allocate those payments that were made, we find that this was not an abuse of discretion. Appellant argues that this adversely and unfairly impacts him in two ways. First of all, appellant is subject to possible suspension of his medical license for failure to pay child support, whereas no such suspension could be imposed for failure to pay spousal support. Secondly, the trial court required appellant to file an amended tax return for 1995. Appellant points out that without an allocation of payments between child and spousal support, he would be unable to allocate payments and deductions for spousal support in completing the amended return. While this, coupled with the court's order to file an amended return for 1995, concededly places appellant upon the horns of a dilemma, the decision as to which payments to treat as spousal support for tax purposes would ultimately lie with appellant in any case. The trial court's refusal to allocate payments does not affect the present contempt finding, and was not on these facts reversible error.[1] Appellant's third assignment of error is therefore overruled.
Appellant's fourth assignment of error asserts that the trial court erred in fashioning its purge order in three respects: (1) ordering appellant to amend his 1995 tax return without providing guidance as to the allocation of support payments, (2) calculating arrearages based upon a time period that post-dates the filing of the contempt motion, and (3) ordering appellant to pay $7,500 in attorney fees and $2,408 in other obligations within sixty days of entry of the contempt finding. This last issue is also the gist of appellant's fifth assignment of error, which will be addressed as well.
For the reasons set forth above, in our discussion of appellant's third assignment of error, we find that the trial court did not abuse its discretion in refusing to allocate funds paid in 1995 between spousal and child support.
Turning to appellant's argument that the trial court improperly calculated arrearages for a time period post-dating the filing of the various contempt motions, we note that it is a common practice for domestic relations courts to consider support payments and obligations arising after filing of the contempt motion but prior to hearing. Indeed, the dictates of judicial economy would hardly permit any other approach, since the parties would otherwise be forced to file continual contempt motions up to the eve of the hearing. We further note that no objection was made by appellant at the hearing to consideration of support issues arising after the date of filing of the contempt motions. We therefore find no abuse of discretion on the part of the trial court in this respect.
Finally, we address appellant's contention that the trial court abused its discretion by ordering him to pay within sixty days attorney fees and other payments approaching $10,000. Appellant argues that he has just emerged from bankruptcy and has no assets from which to make payment. We note that the trial court, in specifically finding that appellant had funds to make these payments, certainly considered its prior findings of fact regarding appellant's actual (as opposed to nominal) income, and we find no abuse of discretion in the trial court's determination that appellant had the ability to pay the ordered amounts within sixty days. Appellant's fourth and fifth assignments of error are accordingly overruled.
In accordance with the foregoing, appellant's first, second, third, fourth and fifth assignments of error are overruled, and the order of the Franklin County Court of Common Pleas, Domestic Relations Division, finding him in contempt of court and imposing sanctions is affirmed.
Judgment affirmed.
 ________________________________ DESHLER, PRESIDING JUDGE
BOWMAN, P.J., and BROWN, J., concur.
[1] We note, although the issue has not been raised or briefed by the parties, that an outright order to file an amended federal tax return may well exceed the jurisdiction of a domestic relations court, as it impinges upon the domain of federal income taxation, an area indisputedly subject to federal preemption. While Ohio Supreme Court case law and subsequently enacted federal tax provisions provide that a domestic relations court may allocate federal income tax exemptions for children to the non-custodial parent, the order of the domestic relations court in such cases it typically limited to ordering the appropriate party to execute pertinent release-of-claims forms promulgated by the IRS. See, generally, Hughes v. Hughes (1988), 35 Ohio St.3d 165;26 U.S.C.A. Section 152; Loyd v. Loyd (June 11, 1993), Lucas App. No. L-92-156, unreported. However, while a domestic relations court may use its contempt powers to force execution of such a release-of-claim form, we question whether the jurisdiction of the court extends to actually requiring a party to complete and file a federal tax form according to the court's dictates. Presumably, if a party subsequently were to file an improper federal tax return claiming the disputed exemptions, IRS enforcement would be guided by the court's allocation of exemptions in the divorce action. See, generally, Serrano v. Serrano (Conn. 1989), 566 A.2d 413;Jones v. Jones (Ark.App. 1993), 858 S.W.2d 130. But, see, Andrewv. Andrew (Dec. 23, 1997), Henry App. No. 7-96-04, unreported (ordering the parties to re-file federal tax returns, but not addressing the preemption issue). However, since as stated above the parties have not raised or briefed this issue upon appeal, we expressly make no determination on this aspect of the trial court's order in the present case.