OPINION
{¶ 1} Appellant, Rachel B. Cardina, appeals the April 26, 2002 judgment entry in which the Lake County Court of Common Pleas, Domestic Relations Division, overruled her motion to show cause.
 {¶ 2} Appellee, Timothy J. Cardina, and appellant were married on November 20, 1987, and three children were born as issue to the marriage. Appellee filed for divorce on July 17, 1997. The parties were granted a divorce on March 20, 2000. Pursuant to the divorce decree:
 {¶ 3} "IT IS FURTHER ORDERED, ADJUDGED AND DECREED that each party shall retain one-half (1/2) of the value of Husband's Ricerca pension as of December 7, 1998: The litigants shall take all action that is necessary to prepare and present to the Court any and all Qualified Domestic Relations Orders (QDRO) required, and there is no just cause for delay, said QDRO shall grant wife a one-half (1/2) interest in said pension as of the fair market value on December 7, 1998, payable to the wife at the time of Husband's retirement, or upon Husband's claiming any benefits from said plan if prior thereto. Husband shall be entitled to any and all increase in value that may accrue after December 7, 1998; free and clear of any claim of the wife."
 {¶ 4} Appellant filed a "Motion to Show Cause and for Attorney Fees" on September 24, 2001. In that motion appellant moved the court for an order requiring appellee to show cause why he should not be held in contempt of court for violating the order of the court regarding the division of pension benefits. Appellant further requested that appellee be ordered to pay her attorney fees and costs for having to pursue the motion.
 {¶ 5} A hearing took place on April 15, 2002. At the hearing the following stipulations were made: (1) the value of appellee's Ricerca pension plan as of December 7, 1998 was $17,827.70; (2) appellee received a distribution in the amount of $13,783.25 in January 2001; (3) of the lump sum distribution $12,653.52, or 91.8036 percent, was earned during the marriage; (4) the plan was terminated by the employer as the result of a merger on November 30, 2000; and (5) the divorce agreement stated that "the litigants shall cooperate to prepare whatever paperwork might be necessary, including a QDRO." At the hearing, the court asked if either party prepared a QDRO, to which appellant's attorney replied that he received a QDRO on April 12, 2002, from appellee's attorney.
 {¶ 6} Appellant testified at the hearing that appellee contacted her via letter on November 17, 2000, because the company was disbursing appellee's retirement funds and he wanted her "to do something by December 10th in order to try to get [her] half of it [the pension]." Appellee took the stand and related that in November 2000, his employer notified him that his retirement package was being terminated as the result of a merger. He proceeded to contact appellant and asked her to prepare a QDRO so she could get her portion of the funds, but he never received one. He further stated that when the money was disbursed, he rolled it over into an Individual Retirement Account ("IRA") and advised appellant as to what he had done. Appellee also revealed that he never refused to sign a QDRO. Appellee explained that he instructed his attorney to execute a QDRO on April 12, 2002, to try to resolve the matter between him and appellant. Appellee mentioned that appellant is seeking a larger amount of money that her expert indicated was in the IRA account.
 {¶ 7} There were several exhibits presented at the hearing. Some of the exhibits were as follows: (1) the November 17, 2000 letter from appellee to appellant; (2) a February 27, 2001 letter from appellee's attorney to appellant's attorney indicating that appellee never received a QDRO and that appellee rolled the money into an IRA because of the tax and penalty ramifications of cashing his pension; (3) a release executed by appellee authorizing appellant to obtain information on the IRA; (4) a June 5, 2001 letter from appellee's attorney to appellant's attorney which stated that no QDRO was received; (5) a statement indicating that the amount of $13,783.25 was disbursed to appellee's IRA on January 29, 2001; (6) a December 12, 2000 letter from appellant's attorney to appellee's first attorney requesting written proof of appellant's share of the benefits; (7) a January 9, 2001 letter from appellant's attorney to appellee's second attorney enclosing the December 12, 2000 letter; and (8) a February 5, 2001 letter requesting an accounting of the money and a date when appellant could expect to receive her share of the money.
 {¶ 8} In a judgment entry dated April 26, 2002, the trial court denied appellant's motion to show cause. Appellant timely filed the instant appeal and now assigns a single assignment of error:
 {¶ 9} "The trial court abused its discretion and committed reversible error when it denied [appellant's] motion to show cause."
 {¶ 10} For her assignment of error, appellant alleges that the trial court erred in overruling her motion to show cause for appellee's delay in the distribution of the proceeds of his pension.
 {¶ 11} The party bringing a show cause motion has the burden of proving that a breach occurred by clear and convincing evidence.Winebrenner v. Winebrenner (Dec. 6, 1996), 11th Dist. No. 96-L-033, 1996 WL 761996, at 3. A prima facie showing of civil contempt exists when the moving party produces evidence of nonpayment according to the terms of the divorce decree; then the burden shifts to the alleged contemnor to establish any defense he may have for nonpayment. Morford v. Morford
(1993), 85 Ohio App.3d 50, 55.
 {¶ 12} In matters of contempt, the trial court has a great deal of discretion, and thus, the court has the ability to either exercise its equitable powers in fashioning a coercive remedy designed to achieve compliance with the court's orders, or, it can determine that the claimed contempt did not violate the authority and dignity of the court.Winebrenner, supra, at 3. In a contempt situation, it is the court that is the offended party even though the issue may have been raised by one of the litigants. Id.
 {¶ 13} In the case at bar, a review of the record indicates that the divorce decree specified that appellant was to receive one-half of the pension and that the litigants could prepare the QDRO and present it to the court for signature. However, neither party presented such document to the court, although appellee finally presented a QDRO on April 12, 2002, after intervening contact. Instead, appellant moved the court for an order requiring appellee to show cause why he should not be held in contempt of court. Thus, she had the burden of showing that appellee refused to comply with the court order. However, she did not try to mitigate any contempt that occurred by preparing a QDRO and presenting it to appellee for signature. Had appellant prepared such a document and had appellee refused to sign it, she would have had a valid contempt action against appellee.
 {¶ 14} Moreover, the Ricerca pension was terminated due to a merger and the value of the pension decreased due to market conditions. The record indicates that the present value of the marital portion of the IRA is $12,653.52.[1] Therefore, even if there was a valid QDRO presented after November 30, 2000, appellant and appellee would not have received the value as of December 1998, because of the Ricerca merger. As a result, we agree with the trial court that the appellee did not do anything to prevent appellant "from receiving her share of the marital portion of the pension via QDRO in a timely fashion nor did his action in any way affect the decrease in value." Both parties suffered the consequences of the condition of the market. However, since neither appellant nor appellee filed the QDRO between March and November 2000, they are estopped from claiming the value of the pension as of December 1998.
 {¶ 15} For the forgoing reasons, appellant's lone assignment of error is not well-taken. The judgment of the Lake County Court of Common Pleas, Domestic Relations Division, is affirmed.
WILLIAM M. O'NEILL, J., CYNTHIA WESTCOTT RICE, J., concur.
[1] This amount represents 91.0836 percent of the IRA value of 13, 783.25 as of January 29, 2001.