OPINION
{¶ 1} The appellant, Stephen Kerchenfaut, appeals the July 3, 2003 judgment of the Common Pleas Court of Allen County, Ohio, overruling his objections to the magistrate's decision that he was in contempt of court for failing to pay his ex-wife's share of the accounts receivable from the family business.
 {¶ 2} On January 15, 1999, Stephen Kerchenfaut filed for divorce from his wife of twenty-four years, the appellee, Edith Kerchenfaut. On December 6, 1999, the parties appeared before the domestic relations magistrate, Deborah Drexler, for a hearing as to the division of property. This hearing continued for seven days during which time many exhibits and a great deal of testimony were taken into evidence. The magistrate issued her decision on May 9, 2000. In this decision, the magistrate determined that Stephen would receive Turner Cartage, Inc., a business operated by he and Edith, and that Stephen was to pay one-half of the company's accounts receivable through 1999 to Edith. The magistrate further found that Stephen had agreed to pay Edith this one-half of Turner Cartage's accounts receivable within two weeks of December 22, 1999, but had failed to do this as of the final date of the hearing, February 18, 2000, so the decision required Stephen to pay the one-half upon receiving the magistrate's decision.
 {¶ 3} Both parties filed objections to the magistrate's decision with the trial court, none of which addressed Turner Cartage or the aforementioned division of the accounts receivable. On December 29, 2000, the trial court entered its final judgment entry, granting Stephen's request for divorce and adopting the magistrate's decision in large part, including that Stephen pay Edith one-half of the accounts receivable of Turner Cartage through 1999. However, the trial court made some changes in its entry based on the various objections by the parties. The court also included an additional order that Edith pay one-half of the "legitimate business expenses for Turner Cartage, Inc. incurred through December 31, 1999[,]" based on an agreement reached by the parties.
 {¶ 4} Stephen and Edith both appealed the trial court's decision to this Court. Once again, no issues involving Turner Cartage were raised as error by either party. Our decision in that appeal was issued on September 5, 2001. Two months later, on November 5, 2001, Stephen filed a "Motion for Contempt and Motion to Partially Set Aside Judgment Entry and Motion for Damages" regarding various pieces of farm equipment, household items, and damage to the marital home. Following this motion, Edith also filed a motion for contempt on December 18, 2001, alleging, inter alia, that Stephen had not paid her one-half of the Turner Cartage accounts receivable as ordered. A two-day hearing on these motions was conducted on April 17 and July 22, 2002, before Magistrate Drexler, at which time both parties were permitted to present evidence in support of their motions.
 {¶ 5} During this hearing, the parties stipulated that Edith's one-half of the accounts receivable from Turner Cartage totaled $9,466.66. In addition, neither party disputed that Stephen had not tendered that amount to Edith. Rather, Stephen subtracted various amounts that he considered to be legitimate business expenses from the stipulated amount and attempted to deliver a check to Edith on January 24, 2001, for $441.54, the total he derived from subtracting the expenses. Edith refused to accept this check because she did not agree with Stephen's determination of what constituted legitimate business expenses for Turner Cartage.
 {¶ 6} On December 17, 2002, the magistrate issued her decision. The magistrate found Stephen in contempt for failing to pay Edith one-half of the accounts receivable. The magistrate also made a determination as to what items constituted legitimate business expenses. She then deducted these figures from the total of accounts receivable for a final total of $5,865.58 and held that Stephen could purge himself of his acts of contempt by tendering that amount to Edith by February 18, 2003, at 11:00 a.m., when his sentence was to be executed. Stephen filed objections to this decision to the trial court. On July 3, 2003, the trial court overruled Stephen's objections and adopted the magistrate's decision with the exception of correcting a dollar amount as to one of the items determined to be a legitimate business expense. This appeal followed, and Stephen now asserts two assignments of error.
The trial court abused its discretion and erred in finding theappellant in contempt of court.
 The trial court abused its discretion and erred by failing tocredit the appellant with "necessary and legitimate businessexpenses," in its finding against the appellant for money owed tothe appellee.
 First Assignment of Error {¶ 7} In Stephen's first assignment of error, he contends that the trial court erred by finding him in contempt for failing to comply with the trial court's order to pay Edith one-half of the accounts receivable. He maintains that he attempted to pay her this one-half after subtracting the total of legitimate business expenses for 1999, which she was ordered to pay him. In addition, Stephen asserts that the order was ambiguous as to these amounts and that he should not be held in contempt because he made a good faith effort to pay Edith as ordered but she refused to accept his check. We disagree.
 {¶ 8} The Revised Code states: "A person guilty of any of the following acts may be punished as for a contempt: (A) Disobedience of, or resistance to, a lawful writ, process, order, rule, judgment, or command of a court or officer[.]" R.C.2705.02(A). The Ohio Supreme Court has held that "since the primary interest involved in a contempt proceeding is the authority and proper functioning of the court, great reliance should be placed upon the discretion of the [court]." Denovchekv. Trumbull Cty. Bd. of Commrs. (1988), 36 Ohio St.3d 14, 16. Thus, "the court that issued the order sought to be enforced is in the best position to determine if that order has been disobeyed." State ex rel. Bitter v. Missig (1995),72 Ohio St.3d 249, 252. As such, a trial court's finding of contempt will not be disturbed on appeal absent an abuse of discretion. Id.
 {¶ 9} In a contempt action involving a divorce, the burden of proof initially rests with the moving party who must make a prima facie showing of contempt by establishing the existence of a divorce decree and evidence of nonpayment according to its terms.Morford v. Morford (1993), 85 Ohio App.3d 50, 55. The burden then shifts to the non-moving party to establish any defense he may have for nonpayment. Id.
 {¶ 10} In the case sub judice, the undisputed evidence revealed that the judgment of divorce required Stephen to pay one-half of the accounts receivable, which was $9,466.66, to Edith and that he did not pay this amount. Thus, the burden shifted to Stephen to establish any defense that he may have had for nonpayment. See id. In attempting to establish a defense to this contempt action, Stephen argued that he did attempt to pay Edith after deducting what he considered to be legitimate business expenses. In addition, Stephen argued that the court order was ambiguous because the determination of what amount to tender to Edith was unclear due to differing opinions as to what constituted a legitimate business expense. In support of his contention, Stephen refers to several places in the record where the magistrate indicated the trial court's orders did not make sense and were contrary to the magistrate's decision. However, a review of the record and the context of the magistrate's remarks reveal that these comments have been misconstrued by Stephen.
 {¶ 11} In its December 29, 2000 judgment, the trial court ordered "that the 1999 accounts receivable for Turner Cartage shall be shared equally by the parties and further that the Defendant [Edith] shall pay one half (1/2) of the legitimate business expenses for Turner Cartage incurred through December 31, 1999." During the contempt hearing, much discussion was had as to whether "expenses" should be deducted from "accounts receivable." The magistrate was concerned about this simply because business accounting methods deduct expenses from income
rather than from assets, which accounts receivable are. Thus, the magistrate expressed concern as to why these two items were listed together and why Stephen was deducting Edith's half of the expenses from her half of the accounts receivable as they were not related. At no point did the magistrate state that this situation created an ambiguity for Stephen as to what he was ordered to do. In addition, as the trial court correctly noted, this was not really the issue.
 {¶ 12} Stephen was ordered to pay Edith one-half of the accounts receivable. The parties stipulated that this amount was in excess of $9,000. Stephen only ever attempted to pay $441.54, well below the stipulated amount. Although he argues that he did not tender the full amount because he was deducting what Edith owed for expenses, nowhere in either the magistrate's decision or the judgment entry was there an order that Edith's half of the accounts receivable was to be off-set by what she owed for legitimate business expenses. Rather, Stephen took it upon himself to off-set these amounts and to determine what items constituted legitimate business expenses. The requirement that Stephen pay half of the accounts receivable to Edith was not dependent upon Edith paying for half of the expenses. Furthermore, if the trial court's order seemed ambiguous, Stephen should have raised that issue when he appealed the judgment of the trial court in 2001. Thus, Stephen's failure to obey this order of the trial court was not excusable. Moreover, nearly one year had elapsed since the court issued this order when Edith filed her motion for contempt. Accordingly, the court did not abuse its discretion in finding Stephen in contempt, and the first assignment of error is overruled.
 Second Assignment of Error {¶ 13} Stephen next asserts that the trial court erred in its determination as to what constituted legitimate business expenses for Turner Cartage through December 31, 1999, when determining the amount he was required to pay in order to purge himself of his acts of contempt. Where, as here, one disputes a court's factual findings, a court's judgment, supported by some competent, credible evidence, will not be reversed as being against the manifest weight of the evidence. Bucher v. Bucher
(June 24, 1998), 3rd Dist. No. 3-98-2, unreported, 1998 WL 334477, citing C.E. Morris Co. v. Foley Construction Co.
(1978), 54 Ohio St.2d 279; Johnson v. Johnson (1991),71 Ohio App.3d 713. Specifically, Stephen takes issue with six specific items, each of which will be discussed in turn.
 {¶ 14} The first item was a Freightliner bill, half of which totaled $1,034.93, for the repair of one of Turner Cartage's trucks. While neither party disputes whether this was a legitimate business expense, they disagree as to whether this expense was incurred in 1999. The evidence regarding this expense consisted of testimony from a truck driver for the company that he experienced problems with the truck leaking oil while on a trip to Texas in early January, 2000. The truck was taken to Freightliner for repairs on January 6, 2000. Although this was the only evidence before the court as to when this expense was incurred, Stephen maintained and continues to maintain that the damage must have occurred sometime in December of 1999, and, thus, constitutes an expense for that year rather than 2000. Based on the limited amount of evidence, we hold that the court did not err in finding that this expense was incurred in 2000, and in determining that Edith was not responsible for one-half of the bill for these repairs.
 {¶ 15} The next item in dispute is a towing bill from Olenburg and Sons. The evidence, both testimonial and documentary, as to this item revealed that this was charged to Turner Cartage's GM Mastercard but was later credited to that account. Edith also produced a letter addressed to Stephen from GM that acknowledged and explained why and when this credit occurred. Therefore, the trial court properly found that this was not a legitimate business expense because, essentially, it was not incurred.
 {¶ 16} Stephen next asserts that the trial court erred in determining that wages paid to Will Brewster, totaling $432.99, were not a legitimate business expense. Here, Brewster testified that he did some work for Turner Cartage in 1999, but that he did not turn in his hours for this work to the company until June or July of 2000. Edith testified that she gave Turner Cartage a check for $617.59 on December 31, 2000, which included these wages as well as other expenses for Turner Cartage incurred in 1999. A copy of this check was admitted into evidence as was a document prepared by Edith showing what items she included in reaching the amount of the check, which included Brewster's wages. The trial court found that Edith paid this expense and determined that this amount would not be included in any off-set. Given this evidence, the trial court did not err in making this determination.
 {¶ 17} The fourth item in dispute involves charges to a credit card belonging to Turner Cartage. The parties testified that the credit card was used on several occasions for personal expenses for both of them as well as business expenses. Personal expenses do not constitute legitimate business expenses simply because they are charged to a business account and paid by the business. Furthermore, Stephen presented no evidence as to which charges were personal and which charges were business related. Thus, the trial court did not err in finding that Stephen had failed to demonstrate that these were legitimate business expenses that should be off-set against the amount he owed Edith.
 {¶ 18} Stephen next asserts that the trial court erred in finding that a $200 loan made to John Reeder by Turner Cartage was a legitimate business expense. Here, the evidence before the court revealed that money from Turner Cartage was loaned to Reeder, who died before having repaid this money. However, Stephen presented no evidence that this was a legitimatebusiness expense. For instance, no evidence was provided as to why this loan was made, the terms of this loan, or if interest was even charged. Rather, the evidence seemed to indicate that this was more of a personal loan made by Stephen with funds from Turner Cartage. Moreover, there was testimony that Turner Cartage received collateral from Reeder in the form of chains and straps and that Turner Cartage retained possession of these items after Reeder's death. In light of the evidence before it, the trial court did not err in refusing to recognize this loan as a legitimate business expense.
 {¶ 19} Lastly, Stephen contends that the trial court erred in finding that the GM Mastercard bill, half of which totaled $788.73, was not a legitimate business expense. Edith testified and presented documentary evidence that she paid one-half of this bill. However, she also testified that this bill contained a rebate and that she credited her portion of the bill in an amount equal to one-half of the rebate. In regards to the rebate, Edith testified that she and Stephen often used the rebate to purchase vehicles for themselves as well as for the business. Stephen now contends that the trial court erred in allowing her to credit one-half of this rebate to herself. Again, both parties testified that both personal and business expenses were charged to this account and that they often used the rebates for their own personal gain. In addition, there was no evidence as to what charges were business related and which were personal. Furthermore, Stephen testified that this card was issued in his name and was often paid by the couple rather than the business. Given this limited evidence, the trial court did not err in refusing to find that this was a legitimate business expense, and the second assignment of error is overruled as to each of these six items.
 {¶ 20} For these reasons, the judgment of the Common Pleas Court of Allen County, Ohio, is affirmed.
Judgment affirmed.
Bryant and Kneppper, JJ., concur.
(Knepper, J., of the Sixth Appellate District sitting by assignment in the Third Appellate District.)