JOURNAL ENTRY AND OPINION
Plaintiff-appellant Invacare Corporation (Invacare) appeals from trial court order of January 11, 2000, which granted defendant-appellee Fay, Sharpe, Beall, Fagan, Minnich McKee, a legal partnership's (Fay Sharpe), motion to compel production of certain invoices and correspondence. For the reasons adduced below, we affirm.
A review of the record on appeal indicates that the underlying action by Invacare alleged legal malpractice, and that the Fay Sharpe counterclaim therein sought recovery of unpaid legal fees.[1] The claims stem from patent litigation involving two matters (the Quickie matter which involved swing-away footrest design and manufacture, and the Jay Medical matter which involved the design and manufacture of seat cushions for wheelchairs) in which Fay Sharpe represented Invacare. Overseeing the management of all Invacare litigation was attorney Ernest P. Mansour of the firm of Mansour, Gavin, Gerlack Manos, who advised Invacare on litigation matters and acted as a liaison between Fay Sharpe and Invacare. Fay Sharpe also represented Invacare as a defendant with regard to litigation (termed by the parties as Motions Design; Quickie Designs, Inc. is the successor in interest to Motions Design, Inc.), which settled in 1989, involving the manufacture of a swing-away footrest for wheelchairs. In August of 1997, on the advice of attorney Mansour, Invacare replaced Fay Sharpe as its counsel in the Quickie matter and retained the law firm of Calfee, Halter Griswold (Calfee Halter). In November of 1997, upon the advice of counsel Mansour and Calfee Halter, Invacare settled the Quickie matter shortly before trial by agreeing to pay $5,900,000. Also, upon the advice of counsel Mansour and Calfee Halter, and while a Fay Sharp dispositive motion was pending, Invacare settled the Jay Medical matter by agreeing to redesign one of Invacare's wheelchair seat cushion products.[2] Fay Sharpe was not consulted about these settlements in the Quickie or Jay Medical matters.
As part of the discovery within the action sub judice, Fay Sharpe sought discovery of fee invoices submitted by Mansour Gavin to Invacare for litigation involving the Quickie and Jay Medical matters. In response, Mansour Gavin and Invacare both produced redacted versions of the invoices submitted to Invacare; these redactions allegedly pertained to matters unrelated to the Quickie and Jay Medical matters. This redacted information was claimed to be protected by attorney-client privilege.
On November 17, 1999, Fay Sharpe filed its motion to compel production, seeking the following unredacted items, at 3:
 (a) documents concerning the terms of the 1997 settlement agreement between Invacare and Quickie; (b) documents concerning the terms of the 1997 settlement agreement between Invacare and Jay Medical; (c) documents reflecting
 design changes made by Invacare pursuant to its 1997 settlement with Jay Medical; (e) (sic) invoices for legal services provided by Ernest Mansour to Invacare for the periods 1989, and November 15, 1997 through 1997; and (f) (sic) correspondence between Mr. Mansour and Invacare's counsel in this case.
On December 3, 1999, Invacare filed its response to the motion to compel production, arguing that the motion to compel should be denied because it had provided Fay Sharpe with approximately 9,000 pages of documents responsive to Fay Sharpe's requests, but that a limited number of documents were withheld on the basis of either attorney-client privilegeor work product doctrine. In particular, Invacare has withheld the following: (1) correspondence between Invacare and its attorneys which was prepared after the execution of the 1997 settlement agreements in the Quickie and Jay Medical matters that are the subject of the legal malpractice action; (2) invoice information unrelated to the Quickie and Jay Medical matters which is privileged pursuant to attorney-client privilege; and, (3) correspondence between attorney Mansour and the law firm of Pietragallo, Bosick Gordon (Pietragallo), who had been retained by Invacare to represent Invacare in the legal malpractice action sub judice, on the basis of the work product doctrine and attorney-client privilege.
On December 8, 1999, Invacare filed a motion to compel complete responses to its first request for production of documents propounded on Fay Sharpe. Also on December 8, 1999, the trial court scheduled an oral hearing on the motion to compel production of documents for December 28, 1999. See Journal Vol. 2407, page 873.[3] On December 20, 1999, Fay Sharpe filed its brief in opposition to Invacare's motion to compel of December 8, 1999.
On December 20, 1999, Fay Sharpe filed a second motion to compel production, seeking the following items, at 1:
 (1) the time sheets of Ernest P. Mansour during the 1989 Motion Designs litigation; and (2) documents relating to the new footrest style that Invacare is currently developing.
 These documents are related to fay Sharpe's defense.
On January 12, 2000, Invacare filed its response to Fay Sharpe's second motion to compel production, arguing that: (1) Invacare was not in possession of attorney Mansour's time sheets for 1989, and that Mansour's law firm was not in possession of attorney Mansour's time records or billing invoices for 1989; and, (2) Invacare supplied Fay Sharpe on January 7, 2000, with a copy of a schematic drawing and parts list of Invacare's proposed new footrest.
On January 7, 2000, the trial court denied the December 8, 1999, motion to compel complete response to first request for production of documents. See Journal Vol. 2417, page 823.
On January 11, 2000, without conducting an in camera review of the unredacted invoices and the alleged work product of the Pietragallo firm, the trial court, using a half-sheet status form entry without explanation or elaboration, granted the Fay Sharpe motion of November 16, 1999, to compel production of documents. See Journal Vol. 2418, page 640, dated January 3, 2000, and journalized January 11, 2000.[4]
Invacare filed its notice of appeal on February 10, 2000, from the order of January 11, 2000. Invacare appeals this discovery order pursuant to R.C. 2505.02(B)(4).
Two assignments of error are presented for review.
The first assignment provides:
 I THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION TO COMPEL, ORDERING INVACARE TO PRODUCE UNREDACTED INVOICES FROM THE LAW FIRM, MANSOUR, GAVIN, GERLOCK (sic) AND MANOS, WHICH CONTAINED PRIVILEGED, ATTORNEY-CLIENT COMMUNICATIONS UNRELATED TO ANY MATTER IN DISPUTE.
The issue of attorney-client privilege in the context of discovery in litigation was recently addressed by this court, as follows:
 The regulation of discovery is left to the discretion of the judge and, upon appeal to this court, we review assignments of error regarding discovery matters for an abuse of that discretion. Alpha Benefits Agency, Inc. v. King Ins. Agency, Inc. (Sept. 2, 1999), Cuyahoga App. No. 74623, unreported. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140; Nakoff v. Fairview General Hospital (1996), 75 Ohio St.3d 254, 662 N.E.2d 1. Absent an abuse of discretion, this court must affirm the judge's disposition of discovery matters. Alpha Benefits, supra.
 A fundamental principle in the attorney-client relationship is that the attorney shall maintain the confidentiality of any information learned during the attorney-client relationship. Kala v. Aluminum Smelting Refining Co., Inc. (1998), 81 Ohio St.3d 1, 4, 688 N.E.2d 258. This precept helps ensure the client's confidence in the attorney and the client's freedom to divulge all matters related to the case, id., thus "facilitating the full development of the facts essential to proper representation," EC 4-1.
 Section 2317.02(A) of the Ohio Revised Code provides a testimonial privilege to communications between an attorney and client:
 An attorney [shall not testify] concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client, except that the attorney may testify by express consent of the client or, if the client is deceased, by the express consent of the surviving spouse or the executor or administrator of the estate of the deceased client * * *.
 It is axiomatic that only the client can waive the attorney-client privilege. E.g., State v. Today's Bookstore, Inc. (1993), 86 Ohio App.3d 810, 818, 621 N.E.2d 1283, cause denied (1993), 66 Ohio St.3d 1522, 614 N.E.2d 1051; H D Steel Service, Inc. v. Weston, Hurd, Fallon, Paisley Howley, 1998 Ohio App. LEXIS 3422 (July 23, 1998), Cuyahoga App. No. 72758, unreported. Absent express consent, it is not within the power of the client's attorney to waive that privilege. See Maust v. Palmer (1994), 94 Ohio App.3d 764, 768, 641 N.E.2d 818; State v. Shipley (1994), 94 Ohio App.3d 771, 775, 641 N.E.2d 822. Moreover, where the client has two attorneys who are partners, an express waiver of the testimonial privilege contained in R.C. 2317.02(A) as to one attorney does not result in a renunciation of all of the client's rights regarding the communications and authorization to the second attorney to testify with respect to those communications.
 Haley v. Dempsey (1921), 14 Ohio App. 326, 328-329, referring to GC S 11494, the predecessor of R.C. 2317.02.
 In addition to the testimonial privilege afforded to a client, Canon 4 of the Ohio Code of Professional Responsibility places upon an attorney the duty to preserve the confidences and secrets of a client. A "`confidence' refers to information protected by the attorney-client privilege under applicable law, and `secret' refers to other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client." DR 4-101(A). An attorney shall not knowingly reveal a confidence or secret of his client but may do so with the client's consent after full disclosure, or when required by law or court order. DR 4-101(B)(1), (C)(1)-(2).
 "The obligation of an attorney to preserve the confidences and secrets of the client continues even after the termination of the attorney's employment." Kala, 81 Ohio St. 3d at 4, citing EC 4-6; see, also, id. at 5, discussing "presumption of shared confidences" in situations where an attorney leaves his or her former employment and becomes employed by a firm representing an opposing party. In addition, "the confidences, which are assumed to be disclosed in the attorney-client relationship, are also presumed to be disclosed to an attorney's fellow associates." Janis v. Castle Apts., Inc. (1993), 90 Ohio App.3d 224, 228, 628 N.E.2d 149, motion to certify the record overruled (1994), 68 Ohio St.3d 1427, 624 N.E.2d 1065. Therefore, the attorney also must "exercise reasonable care to prevent his employees, associates, and others whose services are utilized by him from disclosing or using confidences or secrets of a client * * *." DR 4-101(D).
Lightbody v. Rust (Apr. 20, 2000), Cuyahoga App. No. 75460, unreported, 2000 Ohio App. LEXIS 1737, at 7-11, discretionary appeal disallowed in (Sept. 27, 2000), 90 Ohio St.3d 1424.
In the notice of appeal sub judice, Invacare argues that the unredacted copies of attorney-Mansour's invoices relative to the Motion Designs, Quickie, and Jay Medical matters, which were sought as part of the Fay Sharpe motion to compel production, are protected by attorney-client privilege. Invacare asserts that the trial court should have conducted an in camera inspection of the contested invoices prior to granting the motion to compel in order to determine the non-privileged information contained therein. There are several concerns with these assertions.
First, a timely request for in camera inspection of the contested documents was not sought by Invacare in its brief opposing the motion to compel. Likewise, there is no demonstration that such an inspection was sought at the two-hour hearing the trial court conducted on the discovery dispute; the transcript of that hearing is not in the record on appeal. Thus, Invacare waived the issue of whether the trial court should have conducted an in camera inspection. See In re Estate of Haller (1996),116 Ohio App.3d 866 (failure to timely request an in camera inspection waives error in not providing that inspection).[5]
Second, Invacare, as the party seeking exclusion of the unredacted invoice information, had the burden of timely demonstrating to the trial court that the contested invoice material was protected by attorney-client privilege. See Peyko v. Frederick(1986), 25 Ohio St.3d 164,165. This Invacare failed to do prior to the trial court's ruling of January 11, 2000. Thus, we cannot conclude that the trial court abused its discretion on January 11, 2000, in granting the motion to compel with respect to attorney-Mansour's invoices.
The first assignment of error is overruled.
The second assignment provides:
 II THE TRIAL COURT ERRED IN GRANTING DEFENDANT'S MOTION TO COMPEL, ORDERING INVACARE TO PRODUCE CORRESPONDENCE EXCHANGED BETWEEN ERNEST P. MANSOUR, ESQUIRE AND THE LAW FIRM OF PIETRAGALLO, BOSICK GORDON, BECAUSE THE CORRESPONDENCE WAS PREPARED IN ANTICIPATION OF THIS LEGAL MALPRACTICE LITIGATION AND IS PROTECTED BY THE ATTORNEY WORK-PRODUCT DOCTRINE.
In this assignment, Invacare argues that the trial court erred in ordering it to produce work-product correspondence between attorney-Mansour and Pietragallo (its counsel in the legal malpractice action sub judice), claiming that it was produced subsequent to the filing of the Invacare/Fay Sharpe legal malpractice action in anticipation of litigation and/or trial pursuant to Civ.R. 26(B)(3) and that such correspondence is therefore protected by attorney-client privilege.
As a general matter, Civ.R. 26(B)(3) requires a showing of good cause to permit the discovery of attorney work product made in anticipation of trial.
As in the preceding assignment, it was Invacare's burden to demonstrate that the correspondence in issue was privileged information. Peyko v. Frederick, supra. The relevant parts of the record on appeal do not provide copies of the contested correspondence or affidavits of the contents of that correspondence. The record does not contain a copy of the transcript from the two-hour evidentiary hearing the trial court conducted relative to the motion to compel. Given the scant record provided leading up to the January 11, 2000, ruling, we cannot determine that the trial court abused its discretion in finding that the burden was not met by Invacare when the court granted the motion to compel and necessarily determined that Fay Sharpe demonstrated good cause for the discovery of the contested correspondence.
The second assignment of error is overruled.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 _______________________________________ JAMES D. SWEENEY, PRESIDING JUDGE
PATRICIA A. BLACKMON, J., and ANNE L. KILBANE, J., CONCUR.
[1] The complaint for legal malpractice seeks as damages the following: (1) $5,900,000 Invacare paid in settlement in the Quickie matter; (2) Invacare's costs in redesigning its wheelchair seat cushion in the Jay Medical matter; (3) Invacare's legal fees in defending the Quickie and Jay Medical matters; and, (4) costs, etc. .
[2] The legal malpractice complaint sub judice alleges, at paragraphs 5-6, that Fay Sharpe was Invacare's patent counsel from 1980 to 1998.
[3] Fay Sharpe indicates that the trial court did conduct a two-hour hearing on the motion to compel, but does not provide a date for that hearing. See appellee's brief at 3. Also, the record on appeal does not contain a transcript of that hearing.
[4] On January 28, 2000, Invacare filed a joint motion to clarify and to reconsider the ruling of January 11, 2000. This joint motion was denied by the trial court during the pendency of the notice of appeal herein.
[5] A request for an in camera inspection was made in Invacare's January 28, 2000, motion to reconsider, however for purposes of the January 11, 2000, ruling, that request for an in camera inspection is untimely. Materials filed subsequent to the January 11, 2000, ruling at issue were not before the trial court at the time of its decision on January 11, 2000, and cannot be considered for purposes of appeal from that order.